**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:16-cv-01804-PAB-MJW

FLAVIE BONDEH BAGOUE; and those similarly situated
        Plaintiffs,

v.

DEVELOPMENTAL PATHWAYS, INC., and
CONTINUUM OF COLORADO, INC.
        Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL**
**RULE OF CIVIL PROCEDURE RULE 12(b)(6)**

_____

Defendants Developmental Pathways, Inc. and Continuum of Colorado, Inc. ("Defendants"), through counsel, move for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and in support state as follows:

**SCOPE OF MOTION**

Plaintiff seeks wages for all hours when she was sleeping at her workplace, claiming that the worksite and her employment are not covered by the Fair Labor Standard Act ("FLSA") **Duty of 24 hours or more** regulations ("sleep time regulations"). This claim involves statutory and regulatory interpretation, with no disputed applicable facts, and is thus appropriate for Rule 12(b)(6) relief.  If the regulation applies, then in order to succeed on her claim, Plaintiff is required to identify particular shift(s) there is liability.  However, this is only if sufficient facts are alleged to raise a question of fact demonstrating that any of 5 regulatory elements did not exist during the particular 24-hour shift.  Only then does all time spent sleeping during the shift

1

become compensable.   Plaintiff has admitted facts in the Complaint that four of the five regulatory elements exist, leaving in dispute only one element.  Plaintiff has not and cannot plead sufficient facts to show that the final element—that she was not permitted or provided a minimum of 5 hours of sleep time— occurred at any time during her shifts.

## SETTING

Plaintiff worked at a residential group home for the developmentally disabled operated since 2012 by Defendant Continuum of Colorado, Inc., a Colorado non-profit corporation. Developmental Pathways, Inc., is the state-appointed Community Centered Board ("CCB") for Arapahoe and Douglas Counties, and the City of Aurora. Colo.Rev.Stat. ("C.R.S.") § 25.5-10-209.  The client-residents ("residents") are adults with moderate developmental disabilities that function with some supervision.  The group home provides its residents with a normal living and social environment.  Staff interacts with residents during the day as necessary to provide a home or young adult group living setting ("homelike") and are available if needed at night while both the residents and staff member are sleeping.  Complaint ¶¶ 9, 10 and 31.  The Nevada Group Home ("Nevada") is a six-bedroom home in a typical neighborhood, consisting of four bedrooms on the main floor and two bedrooms in the basement. Five residents have their own bedrooms, with a main-floor bedroom used by staff to sleep at night and as an office during the day. The staff room looks like a young person's bedroom. *See* Exhibit A.

In the zeal to establish staff sleep time as compensable, this unique normalization concept, related policies and worksite including the multifunctional staff room, are incorrectly criticized.  For example, the reason for the 2.5-day staffing pattern is not a cold, calculated effort as a cost containment effort to minimize staffing levels but utilized to keep the number of non-

2

residents appropriately limited, out of respect and to achieve a homelike, non-institutionalized setting for the residents.  Similarly, staff is not to arrive earlier than five minutes before his or her shift begins and is required to leave within five minutes at shift's end, not because of the small size of the staff work space, but again out of respect for Nevada as the residents' home.  This is also the reason for the restriction of personal items an employee may bring to Nevada and prohibition on family or other visitors to Nevada, which are actually commonplace in most work settings.

Nevada exists because of federal, state and local government funding.  Until creation of the CCB system, the developmentally disabled lived in state-run institutions. In the 1980's the Executive Director of the Department of Institutions, with the approval of the Colorado Legislature, de-institutionalized developmentally disabled individuals to locally based CCB service providers.  Thus, these nonprofit agencies (such as Defendants) and their employees (Plaintiff) perform a public function that is quasi-governmental. *See* C.R.S. § 27-10.5-101 et seq.; *see also* §§ 103(3) and (4) and Colorado Department of Health Care Policy and Financing Community Centered Boards Fact Sheet, attached as Exhibit B.

## INTRODUCTION

Plaintiff Flavie Bondeh Bagoue seeks recovery of unpaid wages from Defendants pursuant to Colorado's Wage Claim and Minimum Wage Acts and Wage Order (First Count), the Fair Labor Standards Act (Second Count) and Colorado common law equity (Count Three).  She worked for approximately 10 years under the "continuous shift policy," which required that she be present at the group home for 56 continuous hours (2.5 days). She was paid for the scheduled 40 work hours when the residents were awake and provided 8 hours of sleep time between 10

p.m. and 6 a.m. each day she worked, and also paid for work actually performed during the scheduled sleep time.[1] Complaint ¶¶ 5, 13, 23, 24 27, 28, 53 and 67.

The FLSA and similar Colorado labor laws permit this type of 24-hour compensation plan for employment settings.  These typically include work settings where there is a need to immediately respond to important, unscheduled calls to duty, not simply during scheduled work hours but also during sleep time.  Other examples of such settings include public or private fire departments or ambulance services.[2]  All of these settings have the common elements regarding the importance or essential nature of the job: specialized training; the lack of freedom during the continuous 24-hour shift to leave the premises; no visitors; constant vigilance, as the call to duty even during sleep time might occur without warning or notice; to timely arrive for the work shift and stay until being relieved from duty by another staff person whether because of inclement weather or a need to leave for personal  or family issues; and to respond to potential emergency situations. They are appropriately designated as essential personnel.

Contrary to Plaintiff's theory, all of these admitted elements in this work setting do not render sleep time at Nevada compensable under the FLSA or other labor laws. See Complaint ¶¶ 9, 10, 18, 19, 32, 37-67.  If Plaintiff were correct, no public or quasi-public work setting would qualify under 29 CFR 758.22 or a 24-hour sleep time policy, clearly an absurdity.  Plaintiff's theory is contrary to law.  So long as at least a minimum of 5 hours of sleep time in the aggregate

---

[1]  The paragraphs in Plaintiff's Complaint are replete with statements within one sentence that combine factual assertions with legal statements, and legal conclusions asserted as facts.  By referencing paragraphs in this Motion, Defendants are not agreeing that the legal conclusions are or entitled to be treated as appropriate factual assertions or taken as true for resolving this Motion.

[2]  The 24 –hour sleep time regulation under the FLSA or Colorado Wage Order is available to private employers, without regard to whether the purpose served is of social utility or involves government authority or funding, like fire protection, or public health ambulance service or group home programs such as here.

is provided per 24-hour period, and the employee has access to adequate facilities to sleep while being able to immediately respond to the call to duty are provided and the employee has agreed to work the schedule aware that sleep time is not paid work time, fire departments, 24-hour ambulance services, group homes and other similar employment settings comply with the law.

Plaintiff's primary claim seeks compensation for all unpaid sleep time because she could not leave the group home and could have been called to duty, not just during the scheduled work day, but also during her sleep time. Complaint ¶¶ 32, 36–38, 45 and 47.  In a very conclusory statement, she also claims she regularly did not receive a minimum of 5 hours of sleep per night due to being called to duty that was paid.  Complaint ¶ 53.  The few, limited and occasional examples provided by her do not on any night approach a total of three hours and therefore, fail to support the bald assertion of not being provided a minimum of 5 hours of sleep time. Complaint ¶¶ 48, 50, 52 and 54.  Although conceding the sleep facilities were like hospital or dormitory rooms, she asserts they were inadequate, attempting without legal support to insert a "right to privacy" in the workplace and from the group home residents.  Complaint ¶¶ 59, 60, 61, 64 and 65.  Although for 10 years she knowingly worked under the continuous shift plan, she seeks pay for sleep time since no formal agreement was signed between her and Defendants. Complaint ¶¶ 68, 5, 13, 23, 24, 53, and 67.

Plaintiff also seeks compensation for additional time spent working when she allegedly was briefed by the outgoing shift worker about the five residents at the group home before her shift began.  Plaintiff is vague about how much time that is, but by implication it is not more than 5 minutes. Complaint ¶ 33 and 34.  Frankly, unless a significant issue for one or more of the residents existed (seldom) it was probably less than 2 to 3 minutes.   Additionally, Plaintiff does

not allege specifically that she had to do so or how often, but generically asserts that continuous shift workers on occasion have to stay up to 5 minutes after shift (unspecified frequency) to provide the briefing when the next continuous shift worker does not arrive until the next shift start.  Complaint ¶ 54.  This latter assertion is so vague and infrequent that it does not state a claim.  However, even assuming 5 minutes of time for the briefing, Plaintiff's scheduled shift was 2,400 minutes, such that this highly variable and difficult time to administratively account, qualifies as a *de minimis* preliminary activity.

Plaintiff also seeks compensation under the Colorado Wage Order for work time in excess of 12 hours a day.  However, the work schedules and compensation scheme in these group homes are expressly exempt from Colorado's Minimum Wage Orders and hence Colorado's Wage Claim and Minimum Wage Act under a Special Exemption Order issued by the Colorado Department of Labor, Director of the Division of Labor Standards and Statistics.

Finally, Plaintiff is seeking the alleged wages under federal law.  Therefore, the alternative remedial claim under Colorado Common Law Equity in Count 3 is preempted by the FLSA.

### STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6) MOTION

While Defendants deny the substantive allegations of the Complaint, for the purposes of a motion to dismiss under 12(b)(6), the court must accept all well-pleaded factual allegations as true and resolve all <u>reasonable</u> inferences in favor of the plaintiff. *Kerber v. Qwest Group Life Ins. Plan, 647* F.3d 950, 959 (10th Cir. 2011).

> In reviewing a motion to dismiss, this court must look for plausibility in the Complaint. Under this standard, a Complaint must include enough facts to state a claim to relief that is plausible on its face. The allegations must be enough that, if

6

assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Corder v. Lewis Palmer School Dist. No. 38, 566* F.3d 1219, 1223–24 (10th Cir. 2009) (internal quotations and citations omitted). The *S*upreme Court clarified this pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal, 556* U.S. 662 (2009):

> to withstand a Rule 12(b)(6) motion to dismiss, a Complaint must contain enough *allegations of fact,* taken as true, "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.

*Id.*

The Court explained that: (1) when legal conclusions are involved in the Complaint "the tenet that a court must accept as true all of the allegations contained in a Complaint is inapplicable to [those] conclusions," *Iqbal,* 129 S.Ct. at 1949, and (2) "only a Complaint that states a plausible claim for relief survives a motion to dismiss," *Id.* at 1950. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly,* 127 S.Ct. at 1955. The Court will disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest liability. *Khalik v. United Air Lines, 671* F.3d 1188, 1190–91 (10th Cir. 2012).

Assertions that are mere legal conclusions "couched as facts," need not be accepted as true. *See Gebremedhin v. Am. Family Mut. Ins. Co.*, No. 13-CV-02813-CMA-BNB, 2016 U.S. Dist. LEXIS 21059, at *16 (D. Colo. Feb. 22, 2016) (quoting *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1088 (Colo. 2011)). Since Plaintiff is represented by counsel, the Court need not construe the Complaint liberally or hold her pleading to a less stringent standard to do justice in this matter. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Finally, to state a

claim upon which relief can be granted, <u>factual allegations related to each element</u> of the claim <u>must be pled</u> against defendants in the Complaint. *Khalik* at 1192.

The Tenth Circuit describes this as a "refined standard." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Plausibility refers "to the scope of the allegations in a Complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 127 S.Ct. 1955). Further, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn, 656* F.3d at 1215; see *also Iqbal,* 556 U.S. at 679 ("Determining whether a Complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, the *Twombly/Iqbal* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing Complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Robbins, 519* F.3d at 1247 (internal quotation marks and citations omitted).

So, to survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they were not compensated as required under the FLSA.  Typically this requires facts that show they worked compensable time and for alleged overtime violations that they worked longer than 40 hours in a workweek.  Under Fed. R. Civ. Pro. Rule 8(a)(2), a "plausible" claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1950; see also *Twombly*, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above

the speculative level . . . on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." (internal citation omitted)). A Rule 12(b)(6) dismissal of an FLSA claim is appropriate if a Plaintiff fails to allege sufficient facts for any single workweek demonstrating at least 40 hours of work with uncompensated time in excess of 40 hours. Vague or generalized references to a schedule and occasional instances of work activity are insufficient warranting dismissal. *Lundy v. Catholic Health Sys. of Long Island, Inc.* 711 F.3d 106 (2nd Cir. 2013).

Additionally "documents referred to in the Complaint may be considered at the motion-to-dismiss stage if they are 'central to the plaintiff's claim' and their authenticity is undisputed." *Phillips*, 365 Fed. Appx. at 138, 2013 WL 517629, (citing *Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007); s*ee also GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir. 1997), *rev'd on other grounds*, 537 U.S. 79 (2002); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007) (explaining a court may consider other sources ordinarily examined, in particular, documents incorporated into the Complaint by reference, and matters of which a court may take judicial notice.) Documents appropriately considered by the Court control over any inconsistent allegations in the Complaint. *Stauffer v. Stegemann,* 165 P.3d 713, 716 (Colo. App. 2006); see also *Jacobsen v. Deseret Book Co.,* 287 F.3d 936 (10th Cir. 2002); *Droppleman v. Horsley*, 372 F.2d 249 (10th Cir. 1967); and *Olpin v. Ideal Nat'l Ins. Co.*, 419 F.2d 1250 (10th Cir. 1969). Numerous cases have permitted consideration of matters of public record, orders, and matters deemed part of a Complaint "by implication" without converting the motion into one for summary judgment. See 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.). The documents presented herein have been incorporated by reference, as Plaintiff's

factual statements and conclusory allegations touch on or implicate them. *See GFF Corp.*, 130 F.3d at 1385.

## LEGAL STANDARD UNDER COLORADO'S LABOR LAWS

The Colorado Department of Labor ("CDOL") through the Director of the Division of Labor Standards and Statistics ("Director" and "Division", respectively) administers Colorado's Labor laws.  Colorado's Minimum Wage Act ("Wage Act") has been narrowed by regulation in scope of coverage from all possible occupations to Retail and Service, Commercial Support Service, Food and Beverage and Health and Medical at least since Wage Order #21 in 1997 through the latest revision Wage Order #32.  Section 1, 7 CCR § 1103-1. The Wage Act does not specify the scope of coverage or conditions of work but rather grants wide discretion to determine governing workplace terms and conditions of employment to the Director.

> C.R.S.  §  8-6-106.  Determination  of  minimum  wage  and  conditions
> The director shall determine the minimum wages …standards of conditions of labor and hours of employment…and what are unreasonably long hours…

The Director's organic authority and responsibility is established by statute:

> C.R.S.§  8-1-103.  Division  of  labor  standards  and  statistics  -  director
> (1) …The director shall be the chief administrative officer of the division with such powers, duties, and functions as prescribed by law…
> (3) The powers, duties, and functions of the director …including rule-making, regulation, licensing, promulgation of rules, rates, regulations, and standards, and the rendering of findings, orders, and adjudications, shall be performed under the direction and supervision of the executive director of the department…

While General Orders are effective 10 days after adopted and posted, Special Orders are effective as specified by the Director and presumed valid and in force and prima facie reasonable and lawful.  C.R.S. § 8-1-108(1), (3).  "Order" means any decision, rule, regulation, requirement,

or standard promulgated or issued by the Director.  C.R.S. § 8-1-101(11).  Orders of the Director shall be accepted as evidence by the courts.  C.R.S. § 8-1-104(3).

The general wage order related to sleep time and overtime for hours in excess of 12 hours in a day has remained virtually unchanged since 1997.  *Cf.* Wage Order #22, with Wage Order #32, attached as Exhibit C.  By Special Wage Order the Director exempted the CCB's who provide residential group home services (Nevada) from Colorado's Wage Order.  *See* Director Order dated March 6, 1998.  *See* Exhibit D.  That special exemption has not been modified or rescinded.  To be effective, any such modification or rescission must comply with due process as provided by Colorado Constitution Article II, Section 25 and Colorado's Administrative Procedure Act. C.R.S. §§24-4-104(3)(a), 104.5(2) and 102(10).

Exemptions, whether by general or special order, are not unique. The CDOL issued a similar special wage order exemption to homeless youth shelters, residential child care facilities and secure residential treatment centers on November 17, 2003.  *See*, Exhibit E which includes Wage Order #24, the related version of the Wage Order.    General Wage Order #32, as with its predecessors, exempts governmental entities, political subdivisions and other quasi-governmental entities, i.e. those constitutionally or statutorily established and/or financed by public funds from the Wage Order and Act.  *See* Exhibit E, Wage Order#32 Section 2, definition of employer; 7 CCR 1103-1.  Section 5 exempts other employees within the industries covered by the Wage Order. *Id.*

The Colorado Wage Claim Act, while not establishing substantive employment terms and conditions of employment, mandates timely payment of wages.  This Act provides penalties and

permits the award of attorney fees for wage payment violations.  Plaintiff raises the Wage Claim

Act to seek penalties and attorney fees related to her Minimum Wage Act claim.

## LEGAL STANDARD UNDER THE FAIR LABOR STANDARDS ACT

Compensable Time Under the FLSA

Generally, the FLSA requires that employees be paid at an overtime rate for hours

worked in excess of forty in a workweek. *Salazar v. Butterball, LLC,* 644 F.3d 1130, 1135 (10th

Cir. 2011). The statute does not define "work" or "workweek," and the Supreme Court's early

FLSA decisions interpreted those terms broadly. *Id*. (citing *IBP, Inc. v. Alvarez,* 546 U.S. 21, 25,

126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)). The Supreme Court originally stated that employees

subject to the act must be paid for all time spent in "physical or mental exertion (whether

burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & Railroad Co.*

v. *Muscoda Local No. 123,* 321 U. S. 590 (1944). Subsequently, the Court ruled that there need

be no exertion at all and that all hours are hours worked which the employee is required to give

his employer, stating that "an employer, if he chooses, may hire a man to do nothing, or to wait

for something to happen. Refraining from other activity often is a factor of instant readiness to

serve, and idleness plays a part in all employments in a stand-by capacity." *Armour & Co.* v.

*Wantock,* 323 U.S. 126 (1944); *Skidmore* v. *Swift,* 323 U.S. 134 (1944).

The workweek ordinarily includes "all the time during which an employee is necessarily

required to be on the employer's premises, on duty or at a prescribed work place". *Anderson* v.

*Mt. Clemens Pottery Co.,* 328 U.S. 680, 690-91 (1946).  Whether waiting or idle time is work

under the FLSA is analyzed to determine if the time is spent "waiting to be engaged" or the

employee is "engaged to wait" in terms of principle activities of employment. *Skidmore* v. *Swift,* 323 U.S. 134 (1944)).  What constitutes working must be determined using common sense and the general concept of work or employment. *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 5 Cir., 135 F.2d 320, affirmed 321 U.S. 590, and *Central Missouri Tel. Co. v. Conwell*, 170 F.2d 641 (8th Cir. 1948).  When an employee is "engaged to wait" the time is compensable.  If a person is waiting to be engaged that time is not compensable and only the time actually engaging in a principle activity is compensable.

In 1947, one year after the *Mt. Clemens* decision, Congress enacted the Portal-to-Portal Act to shield employers from expansive judicial decisions that Congress viewed had interpreted the FLSA "in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities." *See Id*. (quoting 29 U.S.C. § 251(a)).  The Portal-to-Portal Act provides that employers cannot be liable for failure to compensate time an employee spends performing activities that are preliminary or postliminary to "the principal activity or activities which such employee is required to perform." *29 U.S.C. § 254(a)*.[3]  The Supreme Court has interpreted this to mean that activities performed prior or subsequent to a regular work shift are compensable if they are "an integral and indispensable part of the principal activities for which covered workmen are employed." *Salazar, 644 F.3d at 1135* (quoting *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956)) and *Smith v. Aztec Well Serv. Co*., 462 F.3d 1274, 1287 (10th Circ. 2006).

---

[3] The Portal-to-Portal Act, 29 U.S.C. § 254(a), provides:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . .
>  (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

In *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1276-77 (10th Cir. 2006), the plaintiffs argued that they were entitled to compensation for time spent loading their trucks with safety and protective gear, then traveling to the job site. The Tenth Circuit acknowledged that, if the plaintiffs' first principal activity - loading their trucks with protective gear - occurred before traveling to the job site, then the plaintiffs' travel time constituted compensable work. *Id.* at 1289. Nonetheless, the Tenth Circuit explained that, where

> an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." Moreover, "[r]equiring employees to show up at their work stations with such standard equipment [as a hard hat, safety glasses, earplugs, and safety shoes] is no different from having a baseball player show up in uniform, . . . or a judge with a robe." It is simply a prerequisite for the job, and is purely preliminary in nature. Consequently, the plaintiffs' travel to and from the well sites was not integral and indispensable to their principal activities merely because they were required to carry their personal safety equipment along with them

462 F.3d at 1289 (quoting Reich v. IBP, Inc., 38 F.3d at 1125, 1126 n.1).

In arriving at its decision that loading protective gear into the truck was not integral and indispensable to the plaintiffs' job, the Tenth Circuit considered the amount of time it took and the level of concentration. The safety equipment was clearly required to do the job, yet the Tenth Circuit still found that it was not integral and indispensable to the employees' principal activities. Similarly, in *Reich v. IBP, Inc.*, the Tenth Circuit held that putting on safety glasses, ear plugs, a hard hat, and safety shoes was not compensable, because it "requires little or no concentration," and can easily be done while focusing on other things. 38 F.3d at 1126. "Thus, although essential to the job, and required by the employer, any time spent on these items is not work." 38 F.3d at 1126. Therefore, what is compensable work is analyzed objectively regarding whether it is

integral and indispensable and measuring the amount and extent of the time and effort. If not extensive, the time is appropriately not compensable under the Portal to Portal Act.

<u>*De Minimis* Time Exception</u>

Not all time or activities occurring at a workplace are compensable. Time may be excluded if it "is so 'insubstantial and insignificant' that it ought not to be included in the work week." *See Reich v. Monfort, Inc.,* 144 F.3d 1329, 1333 (10th Cir. 1998) (quoting *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 693, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)). As explained in *Monfort*, "a few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded. Split-second absurdities are not justified... It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id.* (quoting *Mount Clemens,* 328 U.S. at 692). Thus postliminary time is also not compensable.

<u>Sleep Time Not To Exceed 8 Hours Is Non-Compensable Under 29 CFR 785.22</u>

Whether sleep time is compensable in not a new question and dates back to as early as 1942. *See Johnson v. Dierks Lumber & Coal Co.,* 130 F.2d 115 (8th Circ. 1942), Concurring Opinion, Stone Circuit Judge. The DOL has provided guidance regarding principal activities and sleeping while on the employer's premises. By interpretive regulation DOL has defined sleep time as "waiting to be engaged" if the identified conditions are met even though the employee may be on the employer's premises. 29 CFR §785.22 provides:

> **(a)** *General.* Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide **regularly scheduled sleeping period of not more than 8** hours from hours worked, provided **adequate sleeping facilities are furnished** by the employer and the **employee can usually enjoy an uninterrupted night's sleep**. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no

expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

**(b)** *Interruptions of sleep.* If the **sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked**. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule **that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.** (Emphasis Added)

In the Department's Field Operations Handbook, a guide to its investigators, DOL further clarifies in section 31b12 that the 5-hour minimum of sleep to be provided is an aggregate total.

**31b12 Duty of 24 hours or more: sleeping time.**
**(b)** It is the position of the WHD that a reasonable night's sleep means that an employee obtains at least 5 hours of sleep during the scheduled period. **These 5 hours need not be 5 continuous uninterrupted hours of sleep..**(Emphasis Added)

*See* https://www.dol.gov/whd/FOH/FOH_Ch31.pdf.

Regulatory interpretation is not governed by a private individual's personal belief that hers is the better interpretation than the statements and position of the administering agency. *Biodiversity Conservation Alliance v. Jiron,* 762 F. 3d 1036, 1062 (10th Cir. 2002) (an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail). Moreover, it has long been held that when it comes to sleep time the FLSA does not contemplate that courts weigh an employee's susceptibilities or traits in determining what is acceptable under the sleep time rule. *Rokey v. Day & Zimmermann, Inc.* 157 F. 2d 734 (8th Circ. 1946) (individual susceptibility to night traffic noises not cognizable under FLSA), referenced by DOL in 29 CFR 785.22. Even though the comforts and refinements of home may be lacking, sleep time facilities in the form of dormitories where the 24-hour shift workers all slept were acceptable, as one can adapt to the change of conditions from home to workplace sleep time accommodations. *Eustice v. Federal Cartridge Corp.,* 66 F. Supp. 55, 60 (D. Minn., 1946),

referenced by DOL in 29 CFR 785.22.  The fact that improvements could be made in the facilities beyond being adequate does not create a right under the FLSA.  *Id.* at 61.  Similarly, the failure to Complaint about the sleep time arrangement or sleep facilities during an employee's whole employment may be indicative that they were adequate.  *Van Dyke v. Bluefield Gas Co., 210 F.2d 620 (4th Circ. 1954).*

The employee bears the burden of proving he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).  An employee carries his burden by proving that he has "in fact performed work for which he was improperly compensated and . . . [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*  Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence.  *Id.*  In the absence of pleading sufficient facts to show improper compensation including the amount and extent this occurred so that a just and reasonable inference may be made, the burden does not shift and dismissal is appropriate.  *Lundy,* 711 F.3d. at 114, 115.

Being aware of the work schedule, including from the first day of work and accepting paychecks where the sleep time was not compensated is sufficient to establish agreement under the 24-hour duty sleep time interpretive regulation. *Ariens v. Olin Mathieson Chemical Corp., 382 F.2d 192 (6th Circ. 1967).* Expressing no objection and reporting to work and remaining at work after a change in the schedule of employees from traditional hourly shift compensation to a

24-hour sleep time schedule is acceptance or agreement under the 24-hour duty sleep time regulation, 29 CFR 785.22.  *General Electric Co. v. Porter,* 208 F.2d 805 (9th Circ. 1953).

The FLSA Preempts Plaintiff's Common Law Claim For Wages

The Colorado Common Law Equity claim (Count 3) is preempted by the FLSA.  *Roman v. Maietta Constr.*, 147 F.3d 71 (1st Cir. 1998) ("[T]he plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim."); *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir.  2007) (FLSA's comprehensive enforcement and remedial scheme preempts state based contract, negligence, and fraud claims).

## ARGUMENT

The thrust of Plaintiff's primary theory for recovery is that because she was at Nevada for 2.5 days continuously and during sleep may be called to duty, given a resident's important needs, she is entitled to compensation for the full 56 hours.   In so doing Plaintiff attempts to rewrite the FLSA without legal support and render meaningless DOL's established definition of sleep time as waiting to be engaged and not a compensable principle activity.  Plaintiff's global effort to make all uncompensated sleep time (all 8 hours per night per shift) at Defendants' group homes work because of the setting and the general needs of the developmentally disabled residents is contrary to law and fails to state a claim.   Any violation, if at all, must be by particular shift.

Moreover, as explained below, Plaintiff attempts to deviate from common sense objective standards and concepts; thereby injecting uncertainty in an employment context tied to what is subjective, individualized preferences by her regarding what are principle activities, work time or workplace terms and conditions under the FLSA.  Plaintiff then uses vague conclusory assertions or restatement of elements of the regulation to avoid the application of the sleep time exception.

Under *Twombly* as applied in the FLSA context in *Lundy*, Plaintiff has failed to plausibly allege a violation of 29 CFR § 785.22 regarding the sleep time exclusion to seek the time as compensable.

29 CFR § 785.22 has five components: a) no deduction of greater than 8 hours per day; b) with a minimum of 5 hours of sleep time in the aggregate during that 8-hour period; c) payment for work activities that are an interruption during the sleep time (call to duty); d) adequate sleep facilities; and e) the shift arrangement is expressly or impliedly agreed to. Plaintiff agrees that for the 56 hour "continuous shift policy", she is paid for 40 hours of the 56 hours, with two sleep periods being from 10 pm to 6 am (i.e. 16 hours total of 2 - 8 hour periods); she is paid for the actual time within the sleep time period she is engaged in work activities and she is provided a hospital or dormitory like room to sleep.  Complaint ¶¶ 24, 27, 28, 53 and 60.  Plaintiff states there is a contract for employment (not written), but concerning the continuously shift policy she states that she has never entered into a formal agreement during the 10 years she worked under it. Complaint ¶¶ 5–7 and 68.

At the core and under an objective, common sense plain meaning interpretation of section 785.22, Plaintiff has admitted a, c, d and e were met by Defendant's Continuous Shift Plan Further as to the remaining element of the regulation (b), Plaintiff fails to assert facts establishing she did not receive 5 hours of sleep time on any shift and not paid for the full 8 hours when that occurred.

Plaintiff Fails to Allege Sufficient Facts Regarding Uncompensated Sleep Time of Less Than Five Hours on Any Night Let Alone Regularly.

The primary issue presented is whether Plaintiff experienced any 24-hour shift interruptions to sleep that exceeded 3 hours during the 10 pm to 6 am period making the

remainder of the unpaid sleep time compensable.  She was not called to duty for more than 3 hours, hence received more than 5 hours of sleep time and was compensated for the full eight hours when less than 5 hours of sleep time was provided.  Thus, Plaintiff fails to state a claim.

The Complaint is devoid of any factual allegations and composed of vague conclusions and unsubstantiated, unspecified suppositions which do not identify how let alone identify work time totaling over 3 hours of interruption.  Plaintiff makes only one specific assertion related to a resident for two of the four Friday nights during the month. The interruption to her sleep time was for an alleged 2 hours on each of those two month instances.   She does not allege or provide any other examples and allegations of interruptions of more than 60 minutes on those nights.

For the other six sleep time periods during the month, interruptions must exceed 3 hours to be compensable. No examples approaching that amount of time are alleged. Plaintiff suggests various events that would interrupt her scheduled sleep time but does not identify either the time or frequency associated with these.   Hence they are vague and insufficient or so minimal it cannot be reasonably inferred she was called to duty for time exceeding 3 hours. Her examples include occasional instances of recording resident bowel movement or being awaken by a developmentally disabled resident who tickles her feet requiring her to return the resident to her room to sleep, which took approximately 5 minutes.   Complaint ¶¶ 50, 54 and 68.

In order to stretch the time element of the limited examples of being called to duty, Plaintiff claims that it takes her 30 minutes to fall asleep after being called to duty.  Complaint ¶¶ 48 and 49.  That time is not compensable work or call to duty time.  Personal characteristics or susceptibilities of an employee have never been used to determine what constitutes a compensable principle activity. *Rokey*, 157 F. 2d at 738. Such subjective and individual factors

lack uniformity or predictability in an employment setting.  Plaintiff's circumstances are individual and nothing influenced or controlled by the employer.  Under her interpretation if she and another employee are called to duty for 2 hours and 30 minutes for the same type of sleep time interruption, she gets compensated for the full 8 hours of sleep time and her fellow workers who fall asleep quicker don't.  That is an absurd, illogical and impermissible interpretation of 29 CFR 785.22.

As further support for her conclusory allegation of interruptions in excess of 3 hours, Plaintiff asserts that on going home at the end of her last day in that 2.5-day schedule she was so tired she had to immediately go to sleep.  Complaint ¶ 66.   First of all, her shift ended at 10 pm on Sunday night and one would presume she would have gone home and gone to sleep.  Moreover, it is not uncommon for this to be the case for many workers in very demanding jobs after an eight-hour work day. Her allegation has no probative value regarding whether sleep time interruptions quantitatively exceeded 3 hours.  In sum, Plaintiff's Complaint is no more specific and every bit as generalized as the pleading dismissed under Rule 12(b)(6) in *Lundy*. 711 F.3d.at 114, 115.

Dismissal without leave to amend is appropriate.  Since Plaintiff has stated allegations regarding her work hours, including her schedule and reason for interruptions to sleep time the actual time records she completed and Defendants kept demonstrate the speculative nature of the Complaint.  They clearly establish the failure to state a claim.  These records are regularly used by the courts in determining liability in FLSA cases, whether submitted by employee plaintiffs or employer defendants. See *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 687–88. Since they have been implicitly referenced by her in the Complaint they are properly considered for the

Rule 12(b)(6) motion. From January 2014 through June 2016 when she resigned there are 130 Friday to Sunday 2.5 day continuous shifts. From her time sheets there are a total 41 instances of additional compensation beyond the scheduled 40 – hour workweek time. She covered all or portions of other staff's shifts either immediately before or after her scheduled shift on 17 of those occasions. That is not part of this lawsuit. Complaint ¶ 26.

For sleep time interruptions ("call to duty") Plaintiff reported and she was compensated for 17 instances. Those were as follows: February 28 2014 – 45 minutes; May 9 – 45 minutes; June 6 – 45 minutes; June 20 – 1 hour; October 10 – 30 minutes; January 9, 2015 – 1.5 hours; January 23, 1 hour 18 minutes; February 20 – 1.5 hours; February 27 - 1.5 hours; March 6 – 1 hour; June 21 – 30 minutes; June 19 - 45 minutes; October 16 – 1 hour; and April 30, 2016 – 1.5 hours. *See* Exhibit F. **At no time did Plaintiff ever exceed 3 hour of sleep time interruptions and received less than 5 hours of sleep time.**

The final claim for compensation during sleep time relates to the time clock change. Even though Plaintiff worked during the seasonal daylight savings time change she never worked more than 40 hours in that week as a result of the time change. While she may have started working earlier (or later) by one hour due to the time change, the end of her shift was also one hour earlier (or later) because of the time change. Thus she did not work greater than scheduled 40 hours. The time change simply removed or added 1 hour of sleep time typically permissibly excluded from compensation. With the spring time change she was paid for 40 hours for a 55-hour continuous shift with only 15 hours of available sleep time (eight and seven hours). She was provided the minimum 5 hours of sleep time each night that week. During the fall time change the sleep time was an hour longer, but not added because of the operation of

another federal law.  Under a common sense interpretive approach that added hour of sleep time is still time waiting to be engaged and cause solely by virtue of federal law not the employer. Nothing in the sleep time regulation makes this compensable.

Thus the FLSA does not require compensation for one hour due to the time change at either seasonal time as it affects sleep not call to duty.  Any payment for this is at the discretion of the employer as under *Skidmore* this is not a situation where Plaintiff is engaged to wait. There is no work activity, principle or otherwise, being performed by her.  This clock change occurs by operation of law.

Adequate Sleep Facilities Were Provided

Merriam Webster's Diciontary defines "adequate" as "enough for some need or requirement and a quality that is acceptable but not better than acceptable."  *See* http://www.merriam-webster.com/dictionary/adequate. It defines facility as "built or provided for a specific purpose." *See* http://www.merriam-webster.com/dictionary/facility.   Thus all that 29 CFR 785.22 requires is providing something good enough to sleep.  Consequently, Plaintiff's admission that the room and bed provided are like a hospital or dorm room meets this requirement.  That admission should end the inquiry on this regulatory element.    Further Plaintiff does not allege she put her employer on notice of any alleged inadequacy of the sleep facilities and used them for over 10 years.  This undercuts any claim now that the facilities were inadequate. *Accord Van Dyke* 210 F.2d at 622

However, Plaintiff's other arguments will be addressed as none alters the simple regulatory requirement and each is a request for something better than objectively acceptable. The primary example is the assertion that the sleep facilities are inadequate because she is not

provided a room entirely separate from the group home or away from the residents, i.e. violation of her "right to privacy". Complaint ¶¶ 59, 61, 64 and 65. Nothing in 29 CFR 785.22 or plain meaning of adequate sleeping facilities requires privacy. Dormitory settings where all firefighters slept in a room had no individual privacy and since the 1940's have been found to be adequate. There is no expectation of privacy while at the workplace unless required by law or provided by the employer, neither of which exists here or could reasonably and objectively be expected by employees at the group homes. Whether it is alarms being sounded for responding to fire or ambulance emergencies or a developmental disable client-resident entering a room and/or doing something startling, that is part of the job but does not render sleep facilities such as here inadequate. It is something that can be adjusted to as recognized by the courts again since the 1940's. *Eustice*, 66 F. Supp. at 60.

The fact that TV or recreations items, which are for entertainment and not sleeping, are not provided is irrelevant to the regulatory analysis. Complaint ¶ 60. Similarly, how the room was used in a multifunctional manner during the day is also irrelevant. Next, the fact that the room was not completely dark because there is a light on in the hallway in order at night to immediately be aware of the environment where developmentally developed residents live again does not make what she was provided inadequate. Complaint ¶ 63. In fact she was able to sleep at the group homes for the 960 nights of her 10-year employment. Alternatively, nothing prevented her from using a simple sleep mask to simulate compete darkness if desired. She could then still immediately remove it to be able to view what may be happening or to respond to an emergency, without fumbling for a light switch. Lack of TV, the multifunctional use of the room during the day or light on in the hallway (like traffic noise) are not the accommodations of

home but can be can be adjusted to so that they do not establish inadequate sleep facilities. *Eustice*, 66 F. Supp. at 61; *Rokey* 157 F. 2d at 738.

Most telling of Plaintiff's effort to stretch to create a claim, much like the effort to stretch time calculations or extrapolations discussed above, is the assertion that the Nevada sleep facilities are inadequate because the same bed is used by the other two continuous shift policy workers, **not when she is sleeping in the bed,** but during their separate shifts.  Complaint ¶ 62.

Plaintiff's Uninterrupted 10 Year Participation in the Continuous Shift Policy Constitutes Agreement under the FLSA 24-Hour Sleep Time Regulation

Although Plaintiff acknowledges working under the continuous shift plan for 10 years, which existed before she started working and is the only work schedule she worked under in the two group homes she was at.  She also acknowledges for that whole period of time she was not paid for up to 8 hours of sleep time per day, except for time when called to duty (i.e. she was aware of the continuous shift plan, how it functioned and that she was not being paid for sleep time), but now claims entitlement to payment for the time she was sleeping because Defendants did not enter into a formal agreement with her.  Her knowingly working under the policy for this extended period of time is agreement to work under the policy in this at will context.  Moreover, she acknowledged in her training logs being provided and understanding the pay and time and attendance procedures related to her shift work.  Exhibit G.

Plaintiff's last argument is essentially that Defendants did not explain why they would not pay her when she was sleeping (evidently under what ever authority the continuous shift plan was being implemented).  All that is required is express or implied agreement which clearly exists here. *Ariens,* 382 F.2d at197 and *General Electric Co.,* 208 F.2d at 813. Neither Federal nor Colorado labor law require that an employer explain under what authority, the rationale or

why they are implementing any term and condition of employment. Thus the failure to do so does not impact or influence whether there was an express or implied agreement to work under a shift plan, especially for as long as occurred here.

<u>The Vague Alleged Uncompensated Short Briefing Related to Residents Prior to Scheduled Shift Start Is Preliminary or Di Minimis Time and Not Required To Be Compensated.</u>

Plaintiff correctly asserts that she is not a live-in employee at the group home. As any conscientious employee commuting to work in an urban environment, with the common commuting uncertainties in order to be ready to begin a shift on time, one usually arrives early. Typically, that early arrival at work before the shift start is waiting to be engaged, not compensable work time.  The time when Plaintiff alleges she is briefed occurs immediately prior to her shift starting.  She is not responsible for the supervision of the residents or performing any principle activity from when she arrives until or after the briefing.  The principle activities for her begin at the start of her shift.  The briefing and associated limited, minimal and variable time that it entails demonstrates it is not an integral and indispensable activity. While it may be a benefit to her as she begins her shift and it allows her to be prepared for her shift, she could get that information from reviewing the resident daily summary.  The client log provided to Plaintiffs demonstrates there are usually no significant client events, underscoring how quickly (limited time) that can and probably does occur as well as the simple nature of it.  Again, the remainder of this pre-shift time if she arrives early is hers to engage in personal activities with no principle work activity being performed. These circumstances are similar to those found as not integral and indispensable by the Tenth Circuit Court of Appeals in *Smith,* 462 F.3d at 1289.

Notwithstanding Plaintiff's vagueness as to how long the briefing lasts, what is clear is that the time varies substantially from shift to shift and unless something significant has

happened regarding the 5 residents (probably rare) during the previous shift this briefing time is very small.  Give that the staff person is otherwise free to do other personal things since her shift has not started and the briefing time varies but is short it is administratively difficult to track or for pay purposes.  Thus, this time is preliminary or postliminary activity under the Portal to Portal Act and excluded from compensation under the FLSA.

Assuming the limited briefing time involves a principle activity of work it is still not compensable.  The duration is so variable and limited before the start of the shift with the remainder of the time not involving working as her shift has not started, the briefing time is *de minimis* (as explained above at most 5 minutes as compared to 2,400 minutes). Thus, the failure to compensate that limited time and activity is not an FLSA violation.  The time is also properly excluded as part of rounding permissible under 29 CFR 785.48(b).

As the time records in Exhibit F establish, Plaintiff's time is recorded by her through use of a time clock plus her reporting sleep time interruptions to her supervisor.  She punched in at the beginning of her 2.5-day shift and out on the last day.  Because of the variability of factors related to time clock punching including the precision with which an employee consistently and accurately punches in and out, DOL permits rounding of time in quarter hour (15 minute) increments.  *See* 29 CFR 785.48(b).  Thus time less than 7 minutes can be rounded to zero and time in excess of 7 minutes must be rounded to 15 minutes and compensated.  Her time record is consistent with this regulation.  Defendants followed this procedure.  *See* Exhibit F.  When the punch time was in excess of 7 minutes Plaintiff was compensated to the nearest quarter hour. This occurred 12 times: May 2, 2014 – 15 minutes; June 6 – 15 minutes; July 4 – 15 minutes; July 10 – 15 minutes; February 13, 2015 – 15 minutes; May 29 - 15 minutes; July 3 – 15

minutes; August 26, 2015, 15 minutes; September 4, 2015 - 15 minutes; and September 6, 2015 - 15 minutes; September 18, 2015 – 15 minutes; and October 30, 2015 – 30 minutes. Thus pursuant to 29 CFR 785.48(b) the time sought by Plaintiff related to the pre- and post-shift briefings is not compensable. It was usually very small and when exceeding 7 minutes, was paid to the nearest quarter hour.

## **CONCLUSION**

WHEREFORE Defendants request this Honorable Court dismiss this action against it as Plaintiff has failed to successfully state any cognizable claims against it in accordance with the Federal Rules of Civil Procedure, the Fair Labor Standards, Colorado's Minimum Wage and Wage Claim Acts, and the Colorado common law claim. Defendants thus request dismissal of the action, judgment in their favor, and for such other and further relief as may be just and proper.

Dated this 3rd day of October, 2016

       Respectfully submitted,
       WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

       By: /s/ Henry L. Solano
       Henry L. Solano
       Jason D. Melchar
       Wilson Elser Moskowitz Edelman & Dicker, LLP
       1225 17th Street, Ste 2750
       Denver, CO 80202
       (303) 572-5300
       Henry.Solano@wilsonelser.com

       Chris Forrest
       Miller & Steiert, P.C.
       1901 West Littleton Boulevard Suite 100
       Littleton, CO 80120-2058
       303-798-2525
       cjforrest@m-s-lawyers.com
       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I herby certify that on this 3rd day of October, 2016, a true and correct copy of the

foregoing *Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to 12(b)(6)* was filed

with the Court via CM/ECF and served thereunder and via e-mail to the following:

> Brian David Gonzales
> The Law Offices of Brian D. Gonzales,
> 242 Linden Street
> Fort Collins, CO 80524
> 970-214-0562
> 303-539-9812 (fax)
> BGonzales@ColoradoWageLaw.com
>
> Alexander Neville Hood
> Towards Justice-Denver
> 1535 High Street
> Suite 300
> Denver, CO 80218
> 720-239-2606
> 303-957-2289 (fax)
> alex@towardsjustice.org
> *Attorneys for Plaintiffs*

By:  /s/ Henry L. Solano
     Henry L. Solano