**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:16-cv-01804-PAB-MJW

FLAVIE BONDEH BAGOUE; and those similarly situated

      Plaintiffs,

v.

DEVELOPMENTAL PATHWAYS, INC., and
CONTINUUM OF COLORADO, INC.

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE RULE 12(b)(6)**

---

      Defendants Developmental Pathways, Inc. and Continuum of Colorado, Inc.

("Defendants"), through counsel, move for dismissal of Plaintiff's First Amended Complaint

("FAC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim,

and in support state as follows:

**<u>INCORPORATION BY REFERENCE FROM DEFENDANTS' MOTION TO DISMISS</u>**

      Defendants incorporate by reference the following from their Motion to Dismiss

Plaintiff's Complaint (ECF Document 26):

1. Exhibits A-G where there has been no change in the Exhibits, Exhibit Numbers or reference by number from the Motion to Dismiss to the exhibit number reference in the Motion to Dismiss the First Amended Complaint from the original Motion.[1]

2. The sections titled Scope of the Motion and Setting:  pages 1-3 of the Motion to Dismiss, where the citations to paragraphs 9, 10 and 31 of the Complaint are paragraphs 9-11 and 32 of the FAC. See Page 2 line 14.

3. Defendants' statement of the standard of review under Rule 12(b)(6), the Colorado Labor Laws and the Fair Labor Standards Act.  Pages 6-10, 1012 and 12-18 respectively.

## PROCEDURAL CONTEXT

In response to Defendants' Motion to Dismiss Plaintiff's Complaint which outlined the insufficiency of Plaintiff's allegations, and appended the documents referenced and related to her claims, Plaintiff filed her FAC.  The prior Motion to Dismiss exposed the use of vague and conclusory assertions that did not raise plausible claims of violations of the Fair Labor Standards Act ("FLSA") (where sleep time is not compensable if a minimum of 5 hours of sleep time during an 8-hour sleep period was provided) and overtime for work in excess of 12 hours per day under Colorado's overtime law (where the Colorado Department of Labor has exempted group homes from this requirement).  The Motion to Dismiss was further supported with Plaintiff's own time records including the actual time working during sleep time which was only known to her and reported by her as she was the only person at the facility at night.  See FAC, Paragraph 39

---

[1] Federal Rules of Civil Procedure Rule 10c provides for the adoption by reference of a statement in a prior Pleading.  The D.C.COLO.LCivR do not provide further interpretation of guidance as related to Motions to Dismiss but for Motions for Summary Judgment provide that for filed Exhibits, subsequent Response or Reply Briefs shall not attach Exhibits which have been previously filed regarding the subject motion.  This Courts Civil Practice Standard III F is similar and for Motions for Summary Judgment provides additional guidance regarding specific reference to Exhibits, Depositions and other documents cited in the Motion, Response or Reply.

(hereinafter any reference by paragraph is to the First Amended Complaint unless specified otherwise).   The Wage Order Exemption from the Colorado Director of the Division of Labor Standards and Statistics granting the exemption from the wage law including the 12-hour overtime provision was also provided. Plaintiff's reported time records confirm her conclusory claims as being insufficient regarding the sleep time exemption (no night of less than 5 hours of sleep time in an 8-hour period) and Plaintiff has failed even after the opportunity to amend, to allege plausible claims.  As discussed below, the changes to the FAC only reinforce the basis for the Original Motion to Dismiss.  There still is a lack of factual allegations with the continued use of prior conclusory or vague allegations supplemented in the FAC only by two new, yet equally vague and conclusory additional examples of possible sleep time work activity interruptions.

Significantly, in both the Original and FAC, Plaintiff admits that she was paid "for the precise amount of time that [Plaintiff] is actively helping residents between 10pm to 6am". Paragraph 59.  Although being vague on the frequency that such work activity may occur, she further admits that "helping a resident in the middle of the night with one of these needs [actual work activity] was a task that might take a few minutes..." Paragraph 57.  The group home had five client-residents ("residents") for which any infrequent, few minute night time work activities might occur.  Paragraph 9.

First, Plaintiff does not in the FAC provide greater qualitative or quantitative clarification regarding amounts of time or frequency to the original sleep time work interruption examples listed, but merely repeats those allegations.  Then Plaintiff simply adds the description of two additional types of activities that could occur, but is even vaguer regarding the apparent frequency and duration. This is striking, because Plaintiff, who was aware of the sleep time

regulation when filing the Original Complaint, was criticized in the Motion to Dismiss for merely reciting elements from the regulation in conclusory fashion, and because it identified the specific inadequacies which should have been  addressed in amending her complaint.  This is especially true since the motion was supported by Plaintiff's own reported and recorded sleep time work activities that interrupted the sleep time provided.  This corroborated both the short work activity time estimation suggested in Plaintiff's complaint for each of the listed activities and that the aggregate total of any sleep time interruptions for these work activities was significantly less than 3 hours per night (i.e. more than 5 hours of sleep time was provided her). Plaintiff spent more effort at attempting to enhance the collective action and class action allegations than addressing the inadequately plead substantive claims.

Plaintiff reorders paragraphs from the Original Complaint now numbered as Paragraphs 14-18 with no appreciable changes to the allegations.  In Paragraphs 7-10, 21, 22, 26-29, 40, 41, 44-46, 49, 64, 83 and 86 of the FAC, Plaintiff restates her original allegations with some additions in an apparent attempt to amplify the factual basis related to the collective and class action relief and her capacity as a class action representative.[2]  Hence these allegations are not relevant to this motion to dismiss.

Regarding the sleep time exception under the Fair Labor Standards Act at issue, Paragraphs 49-51, 53 and 71 of the Complaint are restated in Paragraphs 49-55 of the FAC with limited additional allegations.   Plaintiff only adds two possible new work activities that may occasionally occur during the residents' and Plaintiff's sleeping period during the night.  One

---

2  Plaintiff deletes her original paragraph 69 where she asserts that the Defendants were inconsistent in how they treated night duty work for compensation purposes.  This deletion is consistent with the observation that part of the purpose of the amendment to the complaint was to enhance the collective action and class action allegations.

involves time assisting a resident who may occasionally have bad dreams.  Paragraph 49.  The other involves a resident who had to occasionally use a catheter during the night if needing to urinate.  Paragraph 50.  The catheter was kept by Plaintiff in her room to give to the resident for use and to retrieve when the resident finished and went to bed.  Consistent with the Original Complaint, Plaintiff fails to provide any quantitative factual allegations regarding frequency or duration for either circumstance.  Continuing with the same vagueness identified in the dismissal motion, Plaintiff's description and allegations demonstrate at best an inference of a short amount of work time occurring infrequently or occasionally.  Even with these vague and conclusory statements Plaintiff still fails plausibly allege any cumulative total for such work activities that equal 3 hours in any night, such that all 8 hours of the time for such night would have become compensable under the sleep time regulation and hence the FLSA.

One additional change is equally conclusory and vague.  Plaintiff inserts the words "continuous and uninterrupted" before the conclusory statement that she regularly did not get 5 hours of sleep time during the allotted 8-hour sleep time period.  Paragraphs 63 and 64.  This is an attempt to inject a requirement, legal standard or interpretation contrary to the Act and the Department of Labor's interpretive regulations, which were squarely presented in the Original Motion to Dismiss.  Plaintiff adds that during the sleep time Plaintiff was left alone to supervise the residents and was solely and completely responsible for implementing Defendants' policies.  Paragraph 39.  As previous identified in the Motion to Dismiss, the key concept under the FLSA is whether the Plaintiff was engaged in any work or waiting to be engaged as specified in the sleep time regulation, not whether others were working or present.  See 29 CFR §758.22.  Further, Plaintiff cannot mean that she was supervising or implementing policy while she was

asleep at the group home. Like the firefighter or ambulance service personnel who are responsible when called to duty (engaged in work activities), Plaintiff was on the premises waiting to be engaged during sleep time and while sleeping but then was required to be compensated for actual work activities done during the sleep period. Paragraph 59.

The final addition is in Paragraph 81 where Plaintiff alleges on several occasions she objected and complained regarding the failure to compensate for the night time hours understanding that she would be paid for all hours worked. As described below and even admitted in Paragraph 39 she knew she was paid for all hours actually worked during the sleep time period – but was not paid for time she was sleeping i.e. waiting to be engaged to work. Even with the new allegations she continued for approximately 10 years to work under the Continuous Shift Policy, now by her new allegations, affirming that she clearly knew that she was only being paid for actual work activities but not for sleeping. Paragraph 39. Thus, her new allegations, added in response to the shortcoming raised in the Motion to Dismiss, may establish that she did not expressly agree with this policy but it does not detract from the fact that as an at-will employee she knowingly and concededly continued working for over 10 years on the only shift policy that existed. It is not as if the shift schedule and compensation scheme were changed on her. She knew it from the beginning and how it operated such that even though she did not like it she impliedly by her conduct consented for the purpose of 29 CFR §758.22 as clearly interpreted by the Courts.

Plaintiff makes no additional factual allegations related to the Colorado Labor law claim and more importantly in response to the Colorado Department of Labor exemption of Defendants from the Colorado Acts they rely on.

## INTRODUCTION

Plaintiff Flavie Bondeh Bagoue seeks recovery of unpaid wages from Defendants pursuant to Colorado's Wage Claim and Minimum Wage Acts and Wage Order (First Count), the Fair Labor Standards Act (Second Count) and Colorado common law equity (Count Three). She worked for approximately 10 years under the "continuous shift policy," which required that she be present at the group home for 56 continuous hours (2.5 days). She was paid for the scheduled 40 work hours when the residents were awake and provided 8 hours of sleep time between 10 p.m. and 6 a.m. each day she worked, and also paid for work actually performed during the scheduled sleep time.[3] Paragraphs 5, 14, 25, 26, 29, 30, 59 and 75.

The FLSA and similar Colorado labor laws permit this type of 24-hour compensation plan for employment settings. These typically but not exclusively include work settings where there is a need to immediately respond to important, unscheduled calls to duty, not simply during scheduled work hours but also during sleep time. Other similar examples of such settings include public or private fire departments or ambulance services.[4] All of these settings have the common elements regarding the importance or essential nature of the job: specialized training; the lack of freedom during the continuous 24-hour shift to leave the premises; no visitors; constant vigilance, as the call to duty even during sleep time might occur without warning or notice; to timely arrive for the work shift and stay until being relieved from duty by another staff

---

[3]   The paragraphs in Plaintiff's FAC are replete with statements within one sentence that combines factual assertions with legal statements, and legal conclusions asserted as facts. By referencing paragraphs in this Motion, Defendants are not agreeing that the legal conclusions are or entitled to be treated as appropriate factual assertions or taken as true for resolving this Motion.

[4]   The 24 –hour sleep time regulation under the FLSA or Colorado Wage Order is available to private employers, without regard to whether the purpose served is of social utility or involves government authority or funding, like fire protection, or public health ambulance service or group home programs such as here.

person whether because of inclement weather or a need to leave for personal  or family issues; and to respond to potential emergency situations. They are appropriately designated as essential personnel.

Contrary to Plaintiff's theory, all of these admitted elements in this work setting do not render sleep time at Nevada compensable under the FLSA or other labor laws. See Paragraphs 9-11, 18-21, 33, 37-63.  If Plaintiff were correct, then no public or quasi-public work setting would qualify under 29 CFR §758.22 or a 24-hour sleep time policy, clearly an absurdity.  Plaintiff's theory is contrary to law.  So long as at least a minimum of 5 hours of sleep time in the aggregate is provided per 24-hour period, and the employee has access to adequate facilities to sleep while being able to immediately respond to the call to duty are provided and the employee has agreed to work the schedule aware that sleep time is not paid work time, fire departments, 24-hour ambulance services, group homes and other similar employment settings comply with the law.

Plaintiff's primary claim seeks compensation for all unpaid sleep time because she could not leave the group home and could have been called to duty, not just during the scheduled work day, but also during her sleep time. Paragraphs 33, 37-40, 46 and 56.  In a very conclusory statement lacking factual support, she also claims she regularly did not receive a minimum of 5 hours of sleep per night due to being called to duty that was paid.  Complaint ¶ 57 and 59.  The few, limited and occasional examples provided by her do not on any night approach a total of three hours and therefore, fail to support the bald assertion of not being provided a minimum of 5 hours of sleep time.  Paragraphs 49-52 and 55.  Although conceding the sleep facilities were like hospital or dormitory rooms, she asserts they were inadequate, attempting without legal support to insert a "right to privacy" in the workplace and from the group home residents.  Paragraphs

67-73.  Although for 10 years she knowingly worked under the continuous shift plan, she seeks pay for sleep time since no formal agreement was signed between her and Defendants. Paragraphs 76, 5-8, 14, 16, 25, 26, 76 and 81.

Plaintiff also seeks compensation for additional time spent working when she allegedly was briefed by the outgoing shift worker about the five residents at the group home before her shift began.  Plaintiff is vague about how much time that is, but by implication it is not more than 5 minutes. Paragraphs 34 and 35.  Frankly, unless a significant issue for one or more of the residents existed (seldom) it was probably less than 2 to 3 minutes.   Additionally, Plaintiff does not allege specifically that she had to do so or how often, but generically asserts that continuous shift workers on occasion have to stay up to 5 minutes after shift (unspecified frequency) to provide the briefing when the next continuous shift worker does not arrive until the next shift start.  Paragraph 35.  This latter assertion is so vague and infrequent that it does not state a claim. However, even assuming 5 minutes of time for the briefing, Plaintiff's scheduled shift was 2,400 minutes, such that this highly variable and difficult time to administratively account, qualifies as a *de minimis* preliminary activity.

Plaintiff also seeks compensation under the Colorado Wage Order for work time in excess of 12 hours a day.  However, the work schedules and compensation scheme in these group homes are expressly exempt from Colorado's Minimum Wage Orders and hence Colorado's Wage Claim and Minimum Wage Act under a Special Exemption Order issued by the Colorado Department of Labor, Director of the Division of Labor Standards and Statistics.

Finally, Plaintiff is seeking the alleged wages under federal law. Therefore, the alternative remedial claim under Colorado Common Law Equity in Count 3 is preempted by the FLSA.

## ARGUMENT

The thrust of Plaintiff's primary theory for recovery is that because she was at Nevada for 2.5 days continuously and during sleep may be called to duty, given a resident's important needs, she is entitled to compensation for the full 56 hours. In so doing Plaintiff attempts to rewrite the FLSA without legal support and render meaningless DOL's established definition of sleep time as waiting to be engaged and not a compensable principle activity. Plaintiff's global effort to make all uncompensated sleep time (all 8 hours per night per shift) at Defendants' Nevada Group Home work because of the setting and the general needs of the developmentally disabled residents is contrary to law and fails to state a claim.

The 24-hour sleep time regulation expresses no inclusion or exclusion based on some evaluation of or relation to how important the job is, nor the specific nature or level of training for the person working the 24-hour shift and required to sleep on the work premises. The language of the regulation is clear, simple and straight forward with no reference to or listing of qualitative factors regarding type of employer, work activities, employee qualifications or training for application of the 24-hour sleep time regulation. It simply expresses the fundamental FLSA standard for determining whether the activity under inquiry is work or waiting to be engaged. Here the continuous shift workers perform a very important societal function with extensive training. But that does not make 29 CFR §785.22 completely inapplicable as Plaintiff

with no legal support is seeking.  Thus, any violation, if at all, must be analyzed and alleged by particular shift.

Moreover, as explained below even under particular shift analysis, Plaintiff attempts to deviate from common sense objective standards and concepts; thereby injecting uncertainty in an employment context tied to what is subjective, individualized preferences by her regarding what are principle activities, work time or workplace terms and conditions under the FLSA.  Plaintiff then uses vague conclusory assertions or restatement of elements of the regulation to avoid the application of the sleep time exception.  Under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal, 556* U.S. 662 (2009) as applied in the FLSA context in *Lundy v. Catholic Health Sys. of Long Island, Inc.* 711 F.3d 106 (2nd Cir. 2013), Plaintiff has failed to plausibly allege a violation of 29 CFR §785.22 regarding the sleep time exclusion to seek the time as compensable.

29 CFR §785.22 has five components: a) no deduction of greater than 8 hours per day; b) with a minimum of 5 hours of sleep time in the aggregate during that 8-hour period; c) payment for work activities that are an interruption during the sleep time (call to duty); d) adequate sleep facilities; and e) the shift arrangement is expressly or impliedly agreed to. Plaintiff agrees that for the 56 hour "continuous shift policy", she is paid for 40 hours of the 56 hours, with two sleep periods being from 10 pm to 6 am (i.e. 16 hours total of 2 - 8 hour periods); she is paid for the actual time within the sleep time period she is engaged in work activities and she is provided a hospital or dormitory like room to sleep.  Paragraphs 26, 29, 30, 59 and 68.  Plaintiff states there is a contract for employment (not written), but concerning the continuously shift policy she states

that she has never entered into a formal agreement during the 10 years she worked under it. Paragraphs 5–7 and 76.

At the core and under an objective, common sense plain meaning interpretation of section 785.22, Plaintiff has admitted a, c, d and e were met by Defendant's Continuous Shift Plan Further as to the remaining element of the regulation (b), Plaintiff fails to assert facts establishing she did not receive 5 hours of sleep time on any shift and not paid for the full 8 hours when that occurred.

<u>Plaintiff Fails to Allege Sufficient Facts Regarding Uncompensated Sleep Time of Less Than Five Hours on Any Night Let Alone Regularly.</u>

The primary issue presented is whether Plaintiff experienced any 24-hour shift interruptions to sleep that exceeded 3 hours during the 10 pm to 6 am period making the remainder of the unpaid sleep time compensable.  She was not called to duty for more than 3 hours, hence received more than 5 hours of sleep time and was compensated for the full eight hours when less than 5 hours of sleep time was provided.  Thus, Plaintiff fails to state a claim.

The FAC is devoid of any factual allegations and composed of vague conclusions and unsubstantiated, unspecified suppositions which do not identify how she regularly received less than 5-hours of sleep time, let alone identify work time activities totaling over 3 hours of interruption on any night.  Plaintiff makes only one specific assertion related to a resident for two of the four Friday nights during the month. The interruption to her sleep time was for an alleged 2 hours on each of those two month instances.  She does not allege or provide any other examples and allegations of interruptions of more than 60 minutes on those nights. The other work activity examples when actually performed take a few minutes. Paragraph 57.

For the other six sleep time periods during the month, interruptions must exceed 3 hours to be compensable. No examples approaching that amount of time are alleged. Plaintiff suggests various events that would interrupt her scheduled sleep time but does not identify either the time or frequency associated with these.  Hence they are vague and insufficient or so minimal it cannot be reasonably inferred Plaintiff was called to duty for time exceeding 3 hours. Her examples reported by her from her work as the sole person at the facility during the night include occasional instances of recording resident bowel movement, a resident having a bad dream, a resident needing to be given a catheter when needing to urinate during the night or being awaken by a developmentally disabled resident who tickles her feet requiring her to return the resident to her room to sleep, this latter which took approximately 5 minutes.  Paragraphs 49, 50, 52, 55, 57 and 73.  Even though the FAC makes  no effort to specify for any work activity that interrupts sleep time any frequency, whether on a particular night or nights, or how many times during any one night, each of the incidents took only a few minutes, which she reported and was compensated.  Paragraphs 39, 57 and 59.  Even if all four examples occurred on one night, that is no more than 20 minutes (assuming 5 minutes).  If one listed incident occurred for all five residents on one night that amounts to no more than 25 minutes.  This is well short of the requisite total of 180 minutes of the sleep time period of work activity interruptions for the additional 5 hours of sleep time to be compensable even if there were no additional work activity on that night.  In order to stretch the time element of the limited examples of being called to duty, Plaintiff claims that it takes her 30 minutes to fall asleep after being called to duty. Paragraphs 57 and 58.  That time is not compensable work or call to duty time.  Personal characteristics or susceptibilities of an employee have never been used to determine what

constitutes a compensable principle activity.  *Rokey v. Day & Zimmermann, Inc.* 157 F. 2d 734, 738 (8th Circ. 1946). Such subjective and individual factors lack uniformity or predictability in an employment setting.   Plaintiff's circumstances are individual and nothing influenced or controlled by the employer.   Under her interpretation if she and another employee are called to duty for 2 hours and 30 minutes for the same type of sleep time interruption, she gets compensated for the full 8 hours of sleep time and her fellow workers who fall asleep quicker don't.  That is an absurd, illogical and impermissible interpretation of 29 CFR §785.22.

As further support for her conclusory allegation of interruptions in excess of 3 hours, Plaintiff asserts that on going home at the end of her last day in that 2.5-day schedule she was so tired she had to immediately go to sleep.  Paragraph 74.   First of all, her shift ended at 10 pm on Sunday night and one would presume she would have gone home and gone to sleep.  Moreover, it is not uncommon for this to be the case for many workers in very demanding jobs after an eight-hour work day. Her allegation has no probative value regarding whether sleep time interruptions quantitatively exceeded 3 hours.  In sum, Plaintiff's Complaint is no more specific and every bit as generalized as the pleading dismissed under Rule 12(b)(6) in *Lundy*. 711 F.3d.at 114, 115.

Plaintiff has exercised her option to amend her Complaint, having been provided specific warning regarding the shortcomings in her pleadings.  Dismissal is warranted since she has, again, not met her obligations under *Twombly/Iqbal*.   Since Plaintiff has stated allegations regarding her work hours, including her schedule and reason for interruptions to sleep time, the actual time records that she completed as the only person at the facility at night and Defendants kept demonstrate the purely speculative nature of the FAC.  These records establish Plaintiff's

the failure to state a claim.   These types of records are regularly used by the courts in

determining liability in FLSA cases, whether submitted by employee plaintiffs or employer

defendants.   See *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90

L. Ed. 1515 (1946). Since they have been implicitly referenced by Plaintiff in the FAC they are

properly considered for the Rule 12(b)(6) motion. From January 2014 through June 2016 when

she resigned there are 130 Friday to Sunday 2.5 day continuous shifts.   From her time sheets

there are a total 41 instances of additional compensation beyond the scheduled 40 – hour

workweek time.   She covered all or portions of other staff's shifts either immediately before or

after her scheduled shift on 17 of those occasions.   That is not part of this lawsuit.   Paragraph 28.

For sleep time interruptions ("call to duty") Plaintiff reported and she was compensated

for 17 instances. Those were as follows: February 28 2014 – 45 minutes; May 9 – 45 minutes;

June 6 – 45 minutes; June 20 – 1 hour; October 10 – 30 minutes; January 9, 2015 – 1.5 hours;

January 23, 1 hour 18 minutes; February 20 – 1.5 hours; February 27 - 1.5 hours; March 6 – 1

hour; June 21 – 30 minutes; June 19 - 45 minutes; October 16 – 1 hour; and April 30, 2016 – 1.5

hours. *See* Exhibit F, ECF Document 26.   **At no time did Plaintiff ever exceed 3 hours of sleep**

**time interruptions or receive less than 5 hours of sleep time.**

The final claim for compensation during sleep time relates to the time clock change.

Even though Plaintiff worked during the seasonal daylight savings time change she never

worked more than 40 hours in that week as a result of the time change. While she may have

started working earlier (or later) by one hour due to the time change, the end of her shift was also

one hour earlier (or later) because of the time change.   Thus, she did not work greater than

scheduled 40 hours.   The time change simply removed or added 1 hour of sleep time typically

permissibly excluded from compensation.  With the spring time change she was paid for 40 hours for a 55-hour continuous shift with only 15 hours of available sleep time (eight and seven hours).  She was provided the minimum 5 hours of sleep time each night that week.  During the fall time change the sleep time was an hour longer, but not added because of the operation of another federal law.  Under a common sense interpretive approach that added hour of sleep time is still time waiting to be engaged and cause solely by virtue of federal law not the employer. Nothing in the sleep time regulation makes this compensable.

Thus, the FLSA does not require compensation for one hour due to the time change at either seasonal time as it affects sleep not call to duty.  Any payment for this is at the discretion of the employer as under *Skidmore* v. *Swift,* 323 U.S. 134 (1944)[5], this is not a situation where Plaintiff is engaged to wait.  There is no work activity, principle or otherwise, being performed by her.  This clock change occurs by operation of law.

<u>Adequate Sleep Facilities Were Provided</u>

Merriam Webster's Dictionary defines "adequate" as "enough for some need or requirement and a quality that is acceptable but not better than acceptable."  *See* http://www.merriam-webster.com/dictionary/adequate. It defines facility as "built or provided for a specific purpose." *See* http://www.merriam-webster.com/dictionary/facility.   Thus, all that 29 CFR 785.22 requires is providing something good enough to sleep.  Consequently, Plaintiff's admission that the room and bed provided are like a hospital or dorm room meets this requirement.   That admission should end the inquiry on this regulatory element.   Further Plaintiff does not allege she put her employer on notice of any alleged inadequacy of the sleep

---

5 The Department's interpretation of the FLSA is entitled to deference by this Court as established in *Skidmore*, the seminal case for this proposition and which also dealt with the 24-hour duty regulation under consideration here.

facilities and used them for over 10 years.  This undercuts any claim now that the facilities were inadequate.  *Accord Van Dyke v. Bluefield Gas Co.,* 210 F.2d 620, 622 (4th Circ. 1954).

However, Plaintiff's other arguments will be addressed as none alters the simple regulatory requirement and each is a request for something better than objectively acceptable. The primary example is the assertion that the sleep facilities are inadequate because she is not provided a room entirely separate from the group home or away from the residents, i.e. violation of her "right to privacy".  Paragraphs 67-73.  Nothing in 29 CFR §785.22 or plain meaning of adequate sleeping facilities requires privacy.  Dormitory settings where all firefighters slept in a room had no individual privacy and since the 1940's have been found to be adequate.  There is no expectation of privacy while at the workplace unless required by law or provided by the employer, neither of which exists here or could reasonably and objectively be expected by employees at the group homes.  Whether it is alarms being sounded for responding to fire or ambulance emergencies or a developmental disable client-resident entering a room and/or doing something startling, that is part of the job but does not render sleep facilities such as here inadequate.   It is something that can be adjusted to as recognized by the courts again since the 1940's.  *Eustice v. Federal Cartridge Corp.,* 66 F. Supp. 55, 60 (D. Minn., 1946).

The fact that TV or recreational items, which are for entertainment and not sleeping, are not provided is irrelevant to the regulatory analysis.  Paragraph 68.  Similarly, how the room was used in a multifunctional manner during the day is also irrelevant.  Next, the fact that the room was not completely dark because there is a light on in the hallway in order at night to immediately be aware of the environment where developmentally developed residents live again does not make what she was provided inadequate. Paragraph 71.  In fact, she was able to sleep at

the group homes for the 960 nights of her 10-year employment.  Alternatively, nothing prevented

her from using a simple sleep mask to simulate compete darkness if desired.  She could then still

immediately remove it to be able to view what may be happening or to respond to an emergency,

without fumbling for a light switch.  Lack of TV, the multifunctional use of the room during the

day or light on in the hallway (like traffic noise) are not the accommodations of home but can be

can be adjusted to so that they do not establish inadequate sleep facilities.  *Eustice*, 66 F. Supp. at

61; *Rokey* 157 F. 2d at 738.

Most telling of Plaintiff's effort to stretch to create a claim, much like the effort to stretch

time calculations or extrapolations discussed above, is the assertion that the Nevada sleep

facilities are inadequate because the same bed is used by the other two continuous shift policy

workers, **not when she is sleeping in the bed,** but during their separate shifts.  Paragraph 70.

Plaintiff's Uninterrupted 10 Year Participation in the Continuous Shift Policy Constitutes
Agreement under the FLSA 24-Hour Sleep Time Regulation

Although Plaintiff acknowledges working under the continuous shift plan for 10 years,

which existed before she started working and is the only work schedule she worked under in the

two group homes she was at.  She also acknowledges for that whole period of time she was not

paid for up to 8 hours of sleep time per day, except for time when called to duty (i.e. she was

aware of the continuous shift plan, how it functioned and that she was not being paid for sleep

time), but now claims entitlement to payment for the time she was sleeping because Defendants

did not enter into a formal agreement with her.  Her knowingly working under the policy for this

extended period of time is agreement by conduct to work under the policy in this at will context.

Moreover, she acknowledged in her training logs being provided and understanding the pay and

time and attendance procedures related to her shift work.  Exhibit G, ECF Document 26.  It is the

only pay policy for the group home shifts she worked, although in the FAC she now claims she disagreed with the policy a few times.   However, for a <u>substantial period of time</u>, with full knowledge of the policy she both continued to work under it and to be paid thereunder. Paragraph 81.   She cannot now be heard to claim that this 10 year history does not mean she impliedly agreed to work under the policy.   Knowing, continued work under the policy is all that is necessary for implementation of the sleep time policy under the FLSA, even though she did not like it.   This is especially true since it was applicable from her first day and throughout her whole 10 year employment. Her conduct with knowledge is implied agreement for the purposes of the FLSA.

Plaintiff's last argument is essentially that Defendants did not explain why they would not pay her when she was sleeping (evidently under whatever authority the continuous shift plan was being implemented).   All that is required is express or implied agreement which clearly exists here. *Ariens v. Olin Mathieson Chemical Corp.,* 382 F.2d 192, 197 (6th Circ. 1967) and *General Electric Co. v. Porter,* 208 F.2d 805, 813 (9th Circ. 1953).   Neither Federal nor Colorado labor law require that an employer explain under what authority, the rationale or why they are implementing any term and condition of employment. Thus, the failure to do so does not impact or influence whether there was an express or implied agreement to work under a shift plan, especially for as long as occurred here.   Even her latest assertion in the FAC that she thought or understood she would be paid for actual work time is insufficient.   As demonstrated from the above, Defendants were accurately expressing their policy and interpretation of the FLSA.   She was to be paid for all actual work time including the actual time engaged in work

during the 8-hour sleep time period, but not for sleeping, even though she was on the group home premises, waiting to be engaged under the FLSA pursuant to 29 CFR §785.22.

<u>The Vague Alleged Uncompensated Short Briefing Related to Residents Prior to Scheduled Shift Start Is Preliminary or Di Minimis Time and Not Required To Be Compensated.</u>

Plaintiff correctly asserts that she is not a live-in employee at the group home. As any conscientious employee commuting to work in an urban environment, with the common commuting uncertainties in order to be ready to begin a shift on time, one usually arrives early. Typically, that early arrival at work before the shift start is waiting to be engaged, not compensable work time. The time when Plaintiff alleges she is briefed occurs immediately prior to her shift starting. She is not responsible for the supervision of the residents or performing any principle activity from when she arrives until or after the briefing. The principle activities for her begin at the start of her shift. The briefing and associated limited, minimal and variable time that it entails according to her vague allegations demonstrates it is not an integral and indispensable activity. While it may be a benefit to her as she begins her shift and it allows her to be prepared for her shift, she could get that information during her shift. Again, the remainder of this pre-shift time other than the short briefing, which might occur, if she arrives early is hers to engage in personal activities with no principle work activity being performed. These circumstances are similar to those found as not integral and indispensable by the Tenth Circuit in *Smith,* 462 F.3d at 1289.

Notwithstanding Plaintiff's vagueness as to how long the briefing lasts, what is clear is that the time varies substantially from shift to shift and unless something significant has happened regarding the 5 residents (probably rare) during the previous shift this briefing time is very small. Give that the staff person is otherwise free to do other personal things since her shift

has not started and the briefing time varies but is short it is administratively difficult to track or for pay purposes.  Thus, this time is preliminary or postliminary activity under the Portal-to-Portal Act and excluded from compensation under the FLSA.

Assuming the limited briefing time involves a principle activity of work, it is still not compensable.  The duration is so variable and limited before the start of the shift with the remainder of the time not involving working as her shift has not started, the briefing time is *de minimis* (as explained above at most 5 minutes as compared to 2,400 minutes). Thus, the failure to compensate that limited time and activity is not an FLSA violation.  The time is also properly excluded as part of rounding permissible under 29 CFR §785.48(b).

As the time records in Exhibit F, ECF Document 26, establish, Plaintiff's time is recorded by her through use of a time clock plus her reporting sleep time interruptions to her supervisor. She punched in at the beginning of her 2.5-day shift and out on the last day.  Because of the variability of factors related to time clock punching including the precision with which an employee consistently and accurately punches in and out, DOL permits rounding of time in quarter hour (15 minute) increments.  *See* 29 CFR §785.48(b).  Thus, time less than 7 minutes can be rounded to zero and time in excess of 7 minutes must be rounded to 15 minutes and compensated.  Her time record is consistent with this regulation.  Defendants followed this procedure.  *See* Exhibit F, ECF Document 26.  When the punch time was in excess of 7 minutes Plaintiff was compensated to the nearest quarter hour.  This occurred 12 times: May 2, 2014 – 15 minutes; June 6 – 15 minutes; July 4 – 15 minutes; July 10 – 15 minutes; February 13, 2015 – 15 minutes; May 29 - 15 minutes; July 3 – 15 minutes; August 26, 2015, 15 minutes; September 4, 2015 - 15 minutes; and September 6, 2015 - 15 minutes; September 18, 2015 – 15 minutes; and

October 30, 2015 – 30 minutes.  Thus pursuant to 29 CFR §785.48(b) the time sought by Plaintiff related to the pre- and post-shift briefings is not compensable.  It was usually very small and when exceeding 7 minutes was paid to the nearest quarter hour.

## CONCLUSION

WHEREFORE Defendants request this Honorable Court dismiss this action against them as Plaintiff, after having the opportunity to amend, has failed to successfully state any cognizable claims against it in accordance with the Federal Rules of Civil Procedure, the Fair Labor Standards, Colorado's Minimum Wage and Wage Claim Acts, and the Colorado common law claim. Defendants thus request dismissal of the action with prejudice, judgment in their favor, and for such other and further relief as may be just and proper.

Dated this 17th day of November, 2016

> Respectfully submitted,
> WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
>
> By: /s/ Henry L. Solano
> Henry L. Solano
>
> Jason D. Melichar
> Wilson Elser Moskowitz Edelman & Dicker, LLP
> 1225 17th Street, Suite 2750
> Denver, CO 80202
> (303) 572-5300
> Henry.Solano@wilsonelser.com
> Jason.Melichar@wilsonelser.com
>
> Chris Forrest
> Miller & Steiert, P.C.
> 1901 West Littleton Boulevard Suite 100
> Littleton, CO 80120-2058
> (303) 798-2525
> cjforrest@m-s-lawyers.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I herby certify that on this 17th day of November, 2016, a true and correct copy of the foregoing *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to 12(b)(6)* was filed with the Court via CM/ECF and served thereunder and via e-mail to the following:

>Brian David Gonzales
>The Law Offices of Brian D. Gonzales,
>242 Linden Street
>Fort Collins, CO 80524
>(970) 214-0562
>(303) 539-9812 (fax)
>BGonzales@ColoradoWageLaw.com

>Alexander Neville Hood
>Towards Justice-Denver
>1535 High Street
>Suite 300
>Denver, CO 80218
>(720) 239-2606
>(303) 957-2289 (fax)
>alex@towardsjustice.org
>*Attorneys for Plaintiffs*

By: <u>/s/ Henry L. Solano</u>
     Henry L. Solano