**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 16-cv-01804-PAB-MJW

FLAVIE BONDEH BAGOUE; and those similarly situated

     Plaintiffs,

v.

DEVELOPMENTAL PATHWAYS, INC., and
CONTINUUM OF COLORADO, INC.,

     Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT, ECF DOC. 39**

---

## I.     INTRODUCTION

In her First Amended Complaint, ECF Doc. 33 ("Complaint" or "FAC"), Plaintiff Flavie Bagoue alleges she worked for Defendants Developmental Pathways, Inc. and Continuum of Colorado, Inc. in their group homes caring for physically and mentally disabled persons. There, her weekly continuous shifts consisted of 56 consecutive hours of work providing continuous care. For this, Plaintiff was paid for only 40 hours a week, with no overtime compensation, because two 8 hour blocks were excluded for purported sleep. Plaintiff claims that this regime violated state and federal wage and hour law.

In their motion to dismiss, ECF Doc. 39 ("Motion"), Defendants attempt to dismiss Plaintiff's Complaint by relying on a purported exemption to Colorado overtime requirements that they purportedly secretly received from state regulators; a clear misreading of federal law that ignores USDOL guidance directly on point; and copious exhibits that—in an apparent

1

misunderstanding of the motion to dismiss standard—they attach to their Motion. Defendants are

wrong on the law and cannot rely on outside evidence at this stage. Plaintiff's well-pled allegations

should be taken as true and Defendants' Motion should be denied.

## II.     OBJECTION TO FILING OF EXCESS PAGES WITHOUT LEAVE AND WAIVER OF ARGUMENTS CONTAINED IN EXCESS PAGES

On pages one and two of their Motion, Defendants attempt to incorporate 16 pages of their

previously filed, and now moot, motion to dismiss the original complaint into their 22-page

motion. This brings Defendants' motion to 38 pages. *See* Motion at 2 (attempting to incorporate

pages 1-3, 6-10, 10-12, and 12-18 of ECF Doc. 26). Thirty-eight pages clearly violates this Court's

order permitting Defendants 25 pages, rather than the standard 15, and it is particularly bold after

the Court denied Defendants' motion to file a 34-page motion. *See* ECF Docs. 37 (motion

requesting 34 pages), 38 (order denying motion). This end-run around the Court's clear order

should not be entertained. The 16 pages "incorporated by reference" should be ignored by the

Court, with the arguments made in those 16 pages—including **all arguments** on the Colorado

Wage Order—waived for the purposes of this Motion. If the Court were to allow the incorporation

of the 16 additional pages, Plaintiff should be entitled to additional briefing to counter Defendants'

sleight of hand.

## III.     STANDARD OF REVIEW

In considering Defendants' motion to dismiss, the Court must "accept as true all well-

pleaded factual allegations in [the] complaint and view these allegations in the light most favorable

to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

Here, Plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face'" and therefore the Motion should be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]

## IV.    ARGUMENT

### A.  <u>Defendants' Outside Documents Should be Ignored</u>

In support of their arguments, Defendants incorporate by reference various documents previously attached to their mooted motion to dismiss, all of which are outside the scope of the Complaint. Pursuant to Rule 12(d), when faced with documents outside the pleadings attached to a motion to dismiss a court must either (1) convert the motion to a motion for summary judgment, or (2) ignore the documents and consider the motion as a motion to dismiss. Fed. R. Civ. P. 12(d); *see GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F. 3d 1381, 84 (10th Cir. 1997). Because no discovery has been taken in this case, conversion to a motion for summary judgment at this stage of the proceedings would be premature and Plaintiff objects to such a conversion. Plaintiff attaches a Fed. R. Civ. P. 56(d) declaration supporting that fact. *See generally* Ex. A, Dec. of Attorney Hood. If the Court were to convert the Motion, Plaintiff requests notice and the opportunity to properly respond. *See GFF Corp.,* 130 F. 3d at 1384 ("A 12(b)(6) motion must be converted to a motion for summary judgment if matters outside the pleading are presented to and not excluded by the court and all parties are given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

---

[1] Defendants' Motion is replete with complaints about purported vague and conclusory allegations. This is frivolous considering the lengthy recitation of specific facts provided by Plaintiff from which Defendants seems to have gleaned the facts underpinning Plaintiff's claims just fine. *See* FAC ¶¶ 6-94 (Statement of Facts). Defendants' motion fails procedurally and on the law, as described in the remainder of this Response.

Defendants attach (A) a floorplan and various pictures of the interior of a building, (B) a document describing Community Centered Boards, (C) a purported list of wage orders with scribbled notations and copies of Wage Orders 22 and 32, (D) a March 1998 letter, (E) a November 2003 letter, (F) documents purporting to be Plaintiff's 2014-2016 time records, and (G) documents titled training checklist. Plaintiff objects to the authenticity of all of these documents other than the copies of Wage Orders 22 and 32, which appear to be true and accurate copies of the current and historical wage orders. Plaintiff of course would prefer the Court rely on the historical wage orders provided by the Colorado Secretary of State. *See* Colo. Sec'y of State, Code of Colo. Regulations, 7 C.C.R. § 1103-1, http://tinyurl.com/zrdycdj (last visited Dec. 7, 2016) (providing historical versions of the Colorado Wage Order, including 22 and 32).

Defendants attempt to get around the rule that documents outside the pleadings not be considered at the motion to dismiss phase by asserting that Plaintiff incorporated these documents by reference in her Complaint. However, a document referred to in a complaint may only be considered if "the document is referred to in the complaint and is central to the plaintiff's claim," and the document is "indisputably authentic." *GFF Corp.*, 130 F.3d at 1384.

First, Plaintiff objects to the authenticity of the documents and these documents are not self-authenticating. *See* Fed. R. Evid. 902. In particular, the purported letters from the Colorado Department of Labor and Employment ("CDLE") do not meet the self-authentication requirements for a domestic public record. *Id.* at 902(1), (2) (rules for self-authenticating domestic public records).

Further, not only are the documents that Defendants attach to their motion to dismiss not central to Plaintiff's claims, she does not even refer to them in her complaint. Nothing in the

4

complaint refers to a 1998 letter or a 2003 letter regarding application of Colorado minimum wage protections. Meanwhile, although Plaintiff generally alleges violation of state and federal wage and hour law, that cannot, at this stage, open the door to judicial analysis of unauthenticated time records or other records solely in the custody of the employer. Such a suggestion would dramatically alter wage and hour litigation, short-circuit meaningful discovery, and invite courts to base analyses on one-sided evidence presented by employers. Here, Rule 12(d)'s prohibition on considering documents outside the pleadings at the motion to dismiss phase reinforces that the time to consider facts is at summary judgment; when all parties have had the benefit of discovery and are on equal footing to assert and refute the facts.

**B. Plaintiff Alleges a Claim Under the Colorado Wage Order, 7 C.C.R § 1103-1[2]**

If the Court were to consider Defendants' arguments regarding the Colorado Wage Order—incorporated by reference from a different now-moot motion in violation of this Court's page limits, *see supra* at 2—these arguments must fail. The conduct alleged by Plaintiff clearly violates the Colorado Wage Order ("Wage Order"). 7 C.C.R § 1103-1. Defendants' attempt to rely on a letter they received from the CDLE in the late 1990s is contrary to fundamental principles of due process and Colorado's Administrative Procedure Act.

First, it is first helpful to understand Plaintiff's claims under the Wage Order. The Wage Order requires overtime "for any work in excess of: (1) forty (40) hours per workweek; (2) twelve

---

[2] Plaintiff also alleges a claim under the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 *et seq.*, which Defendants appear to ignore. But that claim largely rests on the success of Wage Act and FLSA claims as the CWCA would incorporate any unpaid statutory overtime as "wages" under the CWCA. *See Irigoyen-Morales v. Concreations of Colo.,* 2016 U.S. Dist. LEXIS 85837, at *4 (D. Colo. June 30, 2016).

(12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages." *See* 7 C.C.R § 1103-1. Under certain conditions, the Wage Order excludes sleep time from hours worked. *See* 7 C.C.R § 1103-1 (defining "Time Worked" to exclude "Sleep Time" if certain conditions are met.)

In her case, Plaintiff asserts that "Sleep Time" should not be excluded from "Time Worked." But, at this stage, it does not matter because Plaintiff's claim for overtime under the Wage Order survives regardless of whether sleep time is excluded or not. If sleep time is not excluded, then Plaintiff worked for 56 hours in a week with no overtime. *See* FAC ¶¶ 13-30; 114-121. If sleep time is excluded, then Plaintiff's 40 hours of work over 2.5 days interrupted by two 8 hour intervals of purported sleep necessarily included stints of more than 12 hours of work with no overtime.[3] *See id.* Under either theory—unpaid overtime for hours in excess of 40 in a week or 12 in a day— Plaintiff has a claim for unpaid overtime under the Wage Order.

Defendants do not attempt to claim Plaintiff is not covered, or exempt, from the Wage Order. Nor do Defendants attempt to claim the sleep time exclusion in the Wage Order. Instead, Defendants justify their failure to comply with Colorado wage and hour law by referring to an unauthenticated 1998 letter purportedly from the CDLE. ECF Doc. 26, Exhibit D. Defendants attempt to grant this document some measure of legal import and authenticity by referring to it as

---

[3] Regardless of where you insert the two 8 hour blocks of purported sleep time into the 56 hour continuous shift, you end up with at least one block of time of more than 12 hours of continuous work. In actuality, Defendants' purported sleep time blocks broke Plaintiff's 56 hour shifts into stints of two 16 hour shifts and one 8 hour shift of work. Plaintiff of course claims she was working for the entire 56 hours.

a "Special Wage Order," but it nowhere bears that title nor any other seal or certification of authenticity. Indeed, even the identity of the sender is unclear, despite a vague "[sic]vision of Labor" notation in the top left corner. ECF Doc. 26, Exhibit D.

Fed. R. Evid. 902 allows self-authentication of public documents and records only if they are appropriately sealed or certified. Without that, or compliance with the requirements of Fed. R. Evid. 1005, Defendants cannot use this fuzzy photocopy to prove the content of a public record. Meanwhile, Fed. R. Civ. P. 12(d) advises the Court to ignore documents attached to a motion to dismiss, *see supra*, and this unauthenticated document with scribbled handwriting at the top ought to be ignored in its entirety.

Even if this letter were authentic, it has no legal effect. First, this letter nowhere suggests that it constitutes a Colorado rule promulgated in compliance with the Colorado Administrative Procedure Act or constitutional due process. Second, it is absurd to think that a letter purportedly exempting Defendants from a regulation that has not been in effect for nearly twenty years gives them blanket authority to violate subsequent regulations promulgated at any time thereafter.

## 1. Private Correspondence Cannot Exempt Defendants from the Requirements of the Wage Order

The CDLE lacks the authority to create exemptions to regulations through private correspondence without ensuring due process or following the notice and comment procedures detailed in the State Administrative Procedure Act (APA). The Colorado Constitution, which provides that "[n]o person shall be deprived of life, liberty or property, without due process of law", bars the CDLE from secretly creating exemptions to regulations without due process. Colo. Const. art. II, § 25; *see* U.S. Const amend. XIV, § 1 (requiring same). That is, to the extent that the CDLE dramatically alters the rights of large numbers of employees through rule-making, it must

comply with due process requirements. The APA provides certain specific procedures that ensure due process in rule-making. *See Nat'l Camera, Inc. v. Sanchez*, 832 P.2d 960, 964 (Colo. App. 1991) ("the broad, remedial purpose of administrative procedure acts is to provide comprehensively for due process in administrative proceedings.")(citing *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 (1950)).

The APA requires state agencies to follow certain procedures in promulgating regulations that ensure both public notice and participation. *See* C.R.S. § 24-4-103. This includes public announcement of the rule, publication of the proposed rule in the Colorado Register, and public rule-making proceedings. C.R.S. §§ 24-4-103(2)-(3)(a). This same procedure must be followed when amending an existing rule. C.R.S. § 24-4-103(1.5).

The letter Defendants attach to their Motion cannot alter the clear regulatory requirements described in Wage Orders 22-32. Defendants provide no evidence that this letter constitutes a "Special Wage Order" or was promulgated in compliance with due process or APA procedural requirements. Nowhere do Defendants suggest that this letter was published in the Colorado Register or subject to public notice and comment. Instead, on its face, the letter appears to be a private correspondence with no legal effect that Defendants have squirreled away in a file cabinet for decades and about which the public, and affected employees, were never informed. Such secret correspondence does not have the force of law in our state, as it violates the APA and the due process clauses of the state and federal constitutions.

Defendants' suggestion that the CDLE has corresponded with other employers about possible exemptions to the Wage Order does nothing to alter this analysis. ECF Doc. 26 at 11, Exhibit E. The CDLE has no doubt engaged in substantial private correspondence, but none of that

correspondence has the power to amend the then current Wage Order absent compliance with required constitutional and statutory procedures.

### 2. The Letter Cannot Create Exemptions to Subsequent Wage Orders

The 1998 letter cannot undermine the employment rights of thousands of Colorado workers in secret. But assuming arguendo that it could, any legal effect it may once have had no longer exists. The letter purports to specifically respond to the Colorado Association of Community Centered Boards' request for "a special exemption from the twelve hour overtime requirements of Colorado Minimum Wage Order #21." ECF Doc. 26, Exhibit. D. In responding to that request, even if the CDLE could create a secret exemption to Wage Order 21, it could not simultaneously exempt Defendants from future regulations yet to be promulgated.

Indeed, every Wage Order specifically repeals all prior Wage Orders. *See, e.g.,* 7 C.C.R. § 1103-1 ("This Wage Order shall supersede all previous Wage Orders."). Thus, what Defendants claim was a Special Wage Order in 1998 was "superseded" by the very next Wage Order. If it ever had legal effect, it no longer does.

Moreover, even if the letter were to be considered an interpretation of the Wage Order, rather than a standalone Wage Order, it should still be ignored because it is contrary to the plain meaning of the Wage Order and its clear coverage of the Plaintiff. *See Kennett v. Bayada Home Health Care, Inc.*, 135 F. Supp. 3d 1232, 1244 (D. Colo. 2015) (refusing to defer to a formal CDLE opinion letter because it was "conclusory, contrary to the plain meaning of the [Wage Order] and disclaimer-riddled . . . ."); *see also Ward v. Allstate Ins. Co.,* 45 F.3d 353, 355-56 (10th Cir 1994) (Under Colorado state law, "[a]gency interpretation is not binding, and if an agency misconstrues a statute, the court should not follow."); *Arapahoe Cty. Public Airport Authority v. Centennial*

*Express Airlines, Inc.*, 956 P.2d 587, 592-93 (Colo. 1998) (refusing to defer to a formal opinion letter because it was "brief", contained no "analysis" and failed to cite any authority);

### 3.   It is Defendants' Burden to prove Coverage by the Letter

If the letter did have the force of law, it would be Defendants' burden to show that the letter applied to them. At this stage, that is not at all clear. The letter claims to exempt members of the Colorado Association of Community Centered Boards in 1998 from the Wage Order. Is the Defendant a member of this association? Are the association's members' operations the same now as they were in 1998? Other similar questions could be asked. Plaintiff should be entitled to discovery on the issue and this is Defendants' burden to prove through evidence at summary judgment or trial.

### C.   <u>Plaintiff Alleges a Claim Under the Fair Labor Standards Act</u>

Defendants' admit that Plaintiff is entitled to overtime protections under the FLSA, but argue that they should be exempted from FLSA requirements that employers pay employees overtime for hours worked in excess of 40 hours in a week. ECF Doc. 36 at 10-22; 29 U.S.C. § 207. Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960). Further, the employer has the burden of proof to establish the exemption because it is an affirmative defense. *Corning Glass Works v. Brennan,* 417 U.S. 188 (1974); *see also Sanders v. Elephant Butte Irrigation Dist. of N.M.,* 112 F.3d 468, 470 (10th Cir. 1997); *Yi v. Sterling Collision Centers, Inc.,* 480 F.3d 505, 507 (7th Cir. 2007).

Here, Plaintiff only needs to allege sufficient facts to show that, absent an exemption, she would have a claim under the FLSA. She has done that. It is up to Defendants to show that the allegations in the Complaint justify an exemption. They cannot. If Defendants would like to establish an exemption through affirmative evidence, they can do so at summary judgment or trial.

### 1.  The Sleep Time Exception Does not Apply

The general rule is that "time spent at a worksite (especially time during which an employee is required to be at the worksite) is considered hours worked under the FLSA." U.S. Dep't of Labor Wage & Hour Division Field Assistance Bulletin No. 2016-1 at 5 (Apr. 25, 2016) (hereinafter, "USDOL Bulletin") (citing 29 C.F.R. 785.7; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)), *available at* https://www.dol.gov/whd/ FieldBulletins/fab2016_1.pdf.).[4] Defendants attempt to claim an exception to this rule under 29 C.F.R. § 785.22(a), which applies to employees who are on duty for "24 hours or more."[5] To be entitled to the exception, the regulation requires "that (1) the employee be provided 'adequate sleeping facilities,'[6] (2) she 'can usually enjoy an

---

[4] For ease, Plaintiff attaches the guidance as Exhibit B.

[5] The Court must interpret this regulation—as the USDOL does in its bulletin—consistent with *Skidmore*, which requires a fact intensive inquiry to determine whether time spent sleeping at an employer's worksite is time spent engaged to wait or waiting to be engaged, *i.e.,* compensable time under the FLSA or excludable time under the FLSA. 323 U.S 134, 136-37 (1944). Plaintiff alleges she was left alone for 8 hour blocks to supervise handicapped persons while being permitted to sleep with one eye open when she was not being called to duty. These allegations should be sufficient to proceed to the factfinder to determine, based on the facts, whether or not the time is excludable. If application of the regulation leads to a contrary outcome, the Court should disregard the regulation as *ultra vires*.

[6] Prior to discovery, Plaintiff will not argue the fact-intensive question of whether or not the facilities are adequate, but Plaintiff does not waive that argument or concede that the facilities are adequate. *See* Ex. A ¶ 7 (Plaintiff intends to pursue this inquiry in discovery). The Court need not reach this question, because Defendants fail on the other two prongs.

uninterrupted night's sleep,' and (3) the parties have an 'expressed or implied agreement' to exclude the sleep time." USDOL Bulletin at 5. In attempting to claim the exception, Defendants entirely misinterpret the law surrounding 29 C.F.R. § 785.22(a) and, tellingly, ignore recent agency guidance directly on point. *See generally* USDOL Bulletin.

Though the guidance is directed at employers of domestic workers, "it describes the broadly applicable rules governing under what circumstances an employer may exclude sleep time from an employee's hours worked under the FLSA." *Id.* at 1. As Defendants concede, "[t]he [USDOL's] interpretation of the FLSA is entitled to deference by this Court as established in … the seminal case on this proposition and which also dealt with the 24-hour duty regulation under consideration here." Motion at 16 n. 5 (citing *Skidmore,* 323 U.S. 134). The USDOL Bulletin clarifies conflicting cases decided without the benefit of on-point agency guidance. *See generally Hultgren v. County of Lancaster*, 913 F.2d 498, 500 (8th Cir. 1990); *Bouchard v. Regional Governing Bd. of Region V Mental Retardation Services,* 939 F.2d 1323, 1332 (8th Cir. 1991); *Hendricks v. Okla. Prod. Ctr. Group Homes, Inc.,* 159 Fed. Appx. 875 (10th Cir. 2005); *Braziel v. Tobosa Developmental Servs.,* 166 F.3d 1061 (10th Cir. 1999). Put simply, the USDOL Bulletin establishes the law for this case on whether sleep time can be excluded from compensable time under the FLSA and its interpretation supports Plaintiff's claims.

### a. *Plaintiff did not Usually Receive Five Hours of Uninterrupted Sleep*

The law requires that an employer interested in benefitting from the sleep time exemption demonstrate that the employee "can usually enjoy an uninterrupted night's sleep." 29 C.F.R. § 785.22(a). The USDOL defines "an uninterrupted night's sleep" as "at least **five consecutive hours** of sleep" and "usually" as more than half the time. USDOL Bulletin at 6 (emphasis added).

Thus, unless Defendants can show that Plaintiff received more than five consecutive hours of sleep more than half of the nights, **all of Plaintiff's deducted sleep time was compensable for her entire employment.** This explanation of the sleep time exemption "reflects the reality that a worker who is not permitted at least five hours in a row of uninterrupted time cannot be said to have gotten a meaningful night's sleep." *Id.*

In her Complaint, Plaintiff alleges that her nights were frequently interrupted and that she usually did not receive 5 consecutive hours of sleep. *See* FAC ¶¶ 47-65. Plaintiff alleges that she had to track bathroom use by each of the five residents of the Nevada facility during the night, as well as provide a catheter to one resident, and deal with unusual resident behavior like tickling her toes, suggests that she was awoken many times each night. FAC ¶¶ 47-59, 72-73. Plaintiff alleges that during the night, "many residents had the custom of entering her room without first knocking." FAC ¶ 72. And that she would have to put residents back to bed after a bad dream, record nighttime bowel movements of the residents, and "check on residents using the restroom in the middle of the night to confirm whether they were urinating or having a bowel movement." FAC ¶49-52. Given "all of the interruptions during the night" Plaintiff "rarely had five continuous and uninterrupted hours during which she could sleep." FAC ¶ 63. Taken as true, these allegations mean that the 16 hours deducted from each of Plaintiff's 56 hour shifts were compensable under the FLSA and represent 16 hours of unpaid overtime in each workweek.

Defendants entirely ignore the USDOL's interpretation and instead press their own unsupported interpretation of 29 C.F.R. § 785.22(a). According to Defendants, Plaintiff need only receive 5 hours of sleep, not 5 **consecutive** hours of sleep. Put another way, under Defendants' version of the rule, Plaintiff could be interrupted for 20 minutes out of every hour during an 8-hour

night and this would still be an "uninterrupted night's sleep" *See, e.g.,* Motion at 12 ("She was not called to duty for more than 3 hours, hence received more than 5 hours of sleep time and was compensated for the full eight hours when less than 5 hours of sleep time was provided.").

At best, Defendants conflate § 785.22(a) with § 785.22(b) when arguing that the 5 hours of sleep need not be uninterrupted. Both provisions have requirements mentioning 5 hours of sleep, but the requirements are different and serve entirely different purposes. Section 785.22(a) explains when an employer may exclude sleep time from hours worked. Section 785.22(b) explains when an employer who has demonstrated entitlement to **generally exclude sleep time** under § 785.22(a) must nevertheless compensate the employee for hours designated as sleep time **in a particular night**. USDOL Bulletin at 11 ("Even when an employer is generally permitted to exclude an employee's sleep time from hours worked, there are certain limitations on an employer's ability to exclude all or part of sleep time during a particular sleeping period.").

Section 785.22(a) requires its 5 hours of sleep to be continuous and § 785.22(b) does not. *See* USDOL Bulletin at 6 n. 6 ("Under 29 C.F.R. 785.22(a), the five hours of sleep must be continuous, whereas under 29 C.F.R. 785.22(b), described in more detail below, the five hours need not be continuous but rather may be the cumulative total of "reasonable periods" of sleep. This distinction reflects the different purposes of these two provisions."); USDOL Field Operation Handbook § 31b12(b) (interpreting § 785.22(b), not § 785.22(a),  and stating "these 5 hours need not be 5 continuous."), *available at* https://www.dol.gov/whd/FOH/FOH_Ch31.pdf.

A chart attached to the USDOL Bulletin clearly explains the difference between § 785.22(a) and § 785.22(b):

**Exclusion of Sleep Time from Hours Worked by Domestic Service Employees**

| | Live-in employee | | Shifts of 24 hours or more | Shifts of fewer than 24 hours |
|---|---|---|---|---|
| | Extended periods of time | Permanent | | |
| **Requirements for excluding an employee's sleep time from hours worked** | • Reasonable agreement to exclude sleep time<br><br>• Employer must provide private quarters in a homelike environment | | • Employer provides adequate sleeping facilities<br><br>• Employee can usually enjoy an uninterrupted night's sleep (5 consecutive hours)<br><br>• Express or implied agreement to exclude sleep time | Sleep time may not be excluded |
| **Maximum number of hours that can be excluded** | Up to 8 hours per night as long as the employee is paid for at least 8 hours during the 24-hour period | Up to 8 hours per night as long as the employee is paid for some other hours during the workweek | Up to 8 hours, in a fixed period, in each 24-hour shift | Sleep time may not be excluded |
| **Limitations on exclusion on a particular night** | • Any interruption to sleep time must be paid<br><br>• If during any night the employee does not get reasonable periods of uninterrupted sleep totaling at least 5 hours, the employer may not exclude any sleep time | | | |

USDOL Bulletin at 13 (emphasis added).

Where, as alleged here, an employer does not qualify for the § 785.22(a) exemption, the § 785.22(b) limitation is never in play. Thus, for the purposes of this Motion, there should be little question that the exclusion of 16 hours from compensable time during each of Plaintiff's continuous shifts violates the FLSA and Plaintiff therefore has alleged a FLSA claim.

### b. <u>*There was no Express or Implied Agreement to Exclude Sleep Time*</u>

For an employer to exclude sleep time, § 785.22(a) requires an "expressed or implied agreement." Because Plaintiff has sufficiently alleged that she did not usually receive five consecutive hours of sleep, § 785.22(a) cannot apply and the Court need not reach this issue. But if it were to reach this issue, the USDOL's recent guidance explains that "any evidence that the employee has objected to the exclusion of sleep time from her hours worked, [] would indicate that there was no such agreement." USDOL Bulletin at 7. Plaintiff alleges that she repeatedly complained to her employer about the exclusion of sleep time and that alone should be sufficient at the motion to dismiss stage. FAC ¶¶ 75-81.[7]

The USDOL's interpretation is consistent with prior holdings of The Tenth Circuit. In *Brown v. City of Oklahoma City*, the Tenth Circuit reversed the District Court's finding of an implied agreement to exclude sleep time and remanded for further factual development. 45 F.3d 439, 1994 WL 721389 (10th Cir.1994). The Court found that reliance on the fact that firefighters worked without complaint under a policy excluding sleep time from compensable hours worked for six years was not enough to find an implied agreement to exclude sleep time. *Id.*; *but see Braziel v. Tobosa Developmental Services*, 166 F. 3d 1061 (10th Cir. 1999) (prior to the USDOL memo, but upholding finding of implied agreement to exclude sleep time),

---

[7] The Colorado Wage Order does not permit an implied agreement to exclude sleep time. Rather, it requires an express agreement. 7 C.C.R § 1103-1 (defining "Time Worked" to not include sleep time if certain requirements are met, including "an **express** agreement excluding sleeping….") (emphasis added). Plaintiff alleges that **no** agreement, express or implied, existed. But even if, as Defendants contend, continued employment under a policy were sufficient under the FLSA as an implied contract, it **is not** sufficient under the Wage Order as an express contract.

### 2. The *De Minimus* Exception Does not Apply

Defendants' argue that they need not pay Plaintiff for time spent exchanging reports because she didn't spend much time doing it. They cite as support the Tenth Circuit case *Reich v. Monfort, Inc.*, which found that ten minutes per day spent donning and doffing protective gear and washing work tools was compensable despite its short duration. 144 F.3d 1329, 1333 (10th Cir. 1998). In reaching that conclusion, the Tenth Circuit explained that it "must evaluate three factors in addition to the amount of time to determine whether otherwise compensable time is *de minimis*: "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Id*. at 1334 (*internal citations omitted*).

Here, Plaintiff's allegations about the hand-off discussions that require staff overlap at the group home happened regularly, and it would have been very easy to simply clock in on arrival and clock out when work was complete. FAC ¶¶ 34-36. Nothing in Defendants' motion to dismiss undermines these allegations, and their notion that the *de minimus* time exception ought to apply whenever a task does not take long is simply not the law.

The Portal-to-Portal Act does not affect this analysis. 29 U.S.C. §§ 251-262. That Act does not change "the computation of hours worked within … the period between 'the time on any particular workday at which such employee commences (his) principal activity or activities' and 'the time on any particular workday at which he ceases such principal activity or activities." 29 C.F.R. § 785.9. Work "performed either before or after the regular work shift, on or off the production line, [is] compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which

covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956); *see also IBP, Inc. v. Alvarez*, 546 US 21 (2005). "[I]t is difficult to fix a definite standard for determining what activities of an employee, performed before and after his hours of work, are an integral part of and indispensable to his principal activities. Each case must be decided upon its particular facts." *Baker v. Barnard Constr. Co*., 146 F.3d 1214, 2018-19 (10th Cir. 1998) *citing D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552, 554-55 (10th Cir. 1958).

Plaintiff alleges that the hand-off conversations between group home staff at the group homes were an integral and indispensable part of the employee's principal activities, and that Defendants' required Plaintiff to engage in these conversations. FAC ¶¶ 34-36. Plaintiff had to know about the events of the previous 56 hours to understand the needs of residents and adequately perform her care-taking role. *Id.* ¶¶ 26-27, 34-36. To the extent any question remains as to the nature or importance of these hand-off conversations, the Court should allow this case to proceed to discovery and decide based on the facts presented there.

Defendants also cite 29 CFR 785.48(b) to suggest that they need not pay Plaintiff for the time she spent engaged in hand-off conversations. But that regulation merely allows employers to round employee starting and stopping time to the nearest five or fifteen-minute interval "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." Defendants did not engage in rounding as described in the regulation. Instead, Plaintiff alleges that they systematically delayed the starting time and advanced the stopping time of all Continuous Shift employees. FAC ¶¶ 34-

36. This allegation, taken as true, demonstrates Defendants' ongoing failure to compensate employees properly for all time worked.

### 3. Defendants Cannot Excuse Their Failure to Compensate Plaintiff for the Extra Time She Worked During Daylight Savings Time

There is no reason to deny Plaintiff pay for the extra time she worked at daylight savings time each year. Plaintiff alleges that at daylight savings time, Defendants deducted 8 hours of work from her pay as sleep time, but only 7 hours were so designated. FAC ¶¶ 60-62.

Defendant's excuse for this behavior is, essentially, that it all evened out in the end. ECF Doc. 39 at 15-16. But that is not the law. Department of Labor Regulations specifically require that "[i]f [a] sleeping period is of more than 8 hours, only 8 hours will be credited." 29 CFR § 785.22. And if sleep time may be deducted, you cannot deduct more hours than are offered as sleep time. Plaintiff's claim for compensation for these hours should proceed to discovery.

### D. Plaintiff's Claims in Equity are not Preempted by the FLSA

Defendants suggest, in passing and without citation, that Plaintiff's equitable claims are preempted by the FLSA. ECF Doc. 39 at 9. That is wrong. The FLSA supplements, rather than preempts, state law. Numerous courts have determined that state law can incorporate FLSA's substantive requirements while providing remedies and procedural advantages that FLSA does not provide. *See Irigoyen-Morales*, 2016 U.S. Dist. LEXIS 85837, at *4 (defining "wages" under the Colorado Wage Claim Act to include FLSA overtime); *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 263 (3d Cir. 2012); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 759-60 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011); *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. Ala. 1994) (rejecting Defendants' position and noting that "if violation of the FLSA has occurred, then a violation of the contract, which incorporates the FLSA, will have

occurred"); *cf. Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016) ("Respondents also raised a claim under the Iowa Wage Payment Collection Law. This statute provides for recovery under state law when an employer fails to pay its employees 'all wages due,' which includes FLSA-mandated overtime").

Moreover, in the wage and hour context, facts underpinning violations of statutory wage rights—like the overtime at issue here—can also support claims in equity. *See Young v. Dollar Tree Stores, Inc.,* 11–cv–1840–REB–MJW, 2012 WL 3704994, * 2-3 (D. Colo., Aug. 24, 2012) ("According to the plaintiff, the combined effect of certain Dollar Tree policies was to require her to work for Dollar Tree during mandatory unpaid meal breaks and to make bank deposits on behalf of Dollar Tree without being paid for some or all of the time necessary to make the bank deposits.… Unjust enrichment is based on principles associated with restitution. The plaintiff's specific factual allegations readily fit these three elements.").

There is no preemption and Plaintiff should therefore be permitted to proceed with her claims in equity.

## V.    CONCLUSION

For the forgoing reasons, Defendants' Motion should be denied.

Dated: December 8, 2016

Respectfully submitted,

s/Alexander Hood
Alexander Hood
Attorney and Director of Litigation
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289

Email: alex@towardsjustice.org

Brian D. Gonzales
The Law Offices of Brian D. Gonzales
242 Linden Street
Fort Collins, CO 80524
Tel.: 970-214-0562
Fax: 303-539-9812

*Attorneys for the Plaintiff*

**Certificate of Service**

I hereby certify that on December 8, 2016, I filed the forgoing using the Court's CM/ECF system and this caused all parties that have appeared to be served pursuant to Fed. R. Civ. P. 5.

s/Alexander Hood
Alexander Hood