**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:16-cv-01804-PAB-MJW

FLAVIE BONDEH BAGOUE; and those similarly situated
    Plaintiffs,

v.

DEVELOPMENTAL PATHWAYS, INC., and
CONTINUUM OF COLORADO, INC.
    Defendants.

_____

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
_____

Defendants Developmental Pathways, Inc. and Continuum of Colorado, Inc. ("Defendants") reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Response" and "FAC").  In support thereof, Defendants state:

**DEFENDANTS ARE NOT SUBJECT TO COLORADO'S  MINIMUM WAGE ORDERS**

Plaintiff's Response (ECF 44) asserts a) Exhibit D (ECF 26 - Motion to Dismiss incorporated by reference in Motion to Dismiss FAC 39), the Colorado Division of Labor Director's March 6, 1998 determination that Defendants are not subject to Colorado Wage Orders is inapplicable as not self-authenticating ("CDOL Director" or "Director"); b) it is not appropriately considered since Plaintiff did not reference it in the FAC;  c) the Director's determination does not identifying that it applies to Defendants or her work at the Nevada Group Home ("Nevada"), d) the Director's determination is not valid as it is not a rule; e) it only applies to the Wage Order #21 which was replaced by subsequent Wage Orders and thus inapplicable; and f) it is an invalid Advisory Opinion as contrary to the current Wage Order.

1

The Colorado "Minimum Wages of Workers Act" charges the Director with the determination of "adequate" minimum wages for workers in covered industries. See C.R.S. §§ 8-6-104, -106, -108.5. Accordingly, Colorado's overtime pay requirements and scope of coverage are established not by statute, but the Director. C.R.S. §§ -6-105; 8-1-103(1) and (3); -108(1) and (3), -101(11). *Accord Kennett v. Bayada Home Health Care, Inc.*, 135 F. Supp. 3d 1232, 1238 (D. Colo. 2015). The Director is authorized to engage in rule making, regulation, licensing, promulgation of rules, rates, regulations and standards **and to render findings, orders**, and adjudications. C.R.S. §§ 8-6-104; 8-1-103. "Order" means **any decision,** rule, regulation, requirement, or standard promulgated or **issued by the Director.** C.R.S. § 8-1-101(11). Thus, the Director's Order need not say order on its face as Plaintiff's Response claims. All Director Decisions (Orders) with the Director's seal shall be **valid and in force and prima facie reasonable and lawful until altered or revoked by the director**. C.R.S. §§ 8-6-104; 8-1-103(1) and (3). They shall be received in all courts as evidence. C.R.S. § 8-1-104(3).

Attached Exhibit H is the March 6, 1998 determination of Director Mary Blue ("Director Blue's Order"), bearing her signature and seal. Therefore, it is evidence pursuant to C.R.S. § 8-1-104(3) and Federal Rules of Evidence 902(a). Therein Director Blue determined that facilities which provide services to individuals with developmental disabilities **"should not be subject to any provisions of Colorado Minimum Wage Orders…[and] these facililies are not subject to Colorado Minimum Wage Orders".** Plaintiff's FAC (ECF 33) introduction states she is seeking compensation for "work in homes for the developmentally disabled". Then Paragraph 6 and 13 state "Ms. Bagoue worked as a Life Skills Specialist in Nevada Group Home, a residential habilitation center for developmentally disabled adults operated by Defendants" and are operated under state and federal law. Thus, solely on these admissions, Director Blue's

2

Order applies. Exhibits B (ECF 26) describing the state statutory construct referenced in FAC 13 further confirm Exhibit H's applicability and are publicly available documents appropriately considered by the Court under the authority cited in the motion to dismiss.

None of the CDOL Wage Orders promulgated since Wage Order #21 and Director Blue's Order specifically include service agencies and facilities for the developmentally disabled as covered or alternatively revoke the Director's Order. Director Blue's Order used the plural, "Colorado Wage Orders", not just referencing Wage Order #21 or "not subject to the Colorado Minimum Wage Order". Hence, the plain meaning of her order and the statutory requirement of a specific act to alter or revoke it means the subsequent wage orders do not apply to Defendants. Thus Plaintiff's claim that the Director's Order is revoked by implication by subsequent Wage Orders is contrary to law. C.R.S. §§ 8-6-104; 8-1-103(1) and (3).

Finally, pursuant to CDOL organic statutes, Director Blue's Order is not an advisory opinion letter. Director Blue's Order governs by operation of law, not as a matter of deference. A CDOL Director issued the March 6, 1998 Order and Wage Order #21 through #31, by valid legislatively delegated authority. There is no conflict between these two statutorily authorized actions. Both can be and must be read harmoniously, not in conflict as Plaintiff seeks.

## **PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE FLSA**

As to her Second Claim for Relief under the FLSA, Plaintiff asserts dismissal is inappropriate a) as her allegation that she was left alone sleeping with one eye open supervising the sleeping developmentally disabled residents is sufficient to claim that all her time sleeping is compensable (29 CFR §758.22 does not apply), b) she has filed a lengthy complaint thus she has sufficiently asserted facts that she did not regularly get uninterrupted nightly sleep or 5 hours of continuous sleep rendering all sleep time compensable; c) if Plaintiff's assertions in a) and/or b)

are insufficient to make 29 CFR §758.22 inapplicable, the Court should invalidate it as ultra vires; d) Plaintiff did not expressly or impliedly agree to the 24-hour continuous shift policy; and e) the pre-shift and post-shift information exchanges are not *de minimis* or subject to rounding.

With her extensive first-hand knowledge of working at Nevada for numerous years Plaintiff listed all of her reasons why the sleeping facilities were inadequate in the FAC. Attempting to shift the pleading burden she now alleges that a fact intensive inquiry regarding how they are adequate necessitates discovery to defend against Defendant's "alleged affirmative defense"; thus, choosing not to address the dismissal motion's demonstration of her clearly legally insufficient allegation of facility inadequacy in the FAC. The reality is this is an effort to avoid the consequences of her failure to allege sufficient facts of facility inadequacy which her own long work at Nevada has not identified. She must prove sleep time is compensable, which is different from an employer's effort to have employees otherwise covered excluded (exempted) from FLSA coverage as administrative, executive and professional personnel. The cases regarding that exemption are inapposite.

Next, she asserts that the architectural drawing and pictures of her sleep facilities attached as Exhibit A to the motion to dismiss are not appropriate for consideration because they are not central to her FLSA claim, she did not directly reference them in the FAC and they are not authenticated. Any document that identifies what the sleep facilities look like are expressly central to her claims. She gives a self-serving limited description of the facilities and therefore has referenced them by implication. Finally, from first-hand knowledge she can easily confirm or specifically refute if they are representative of the sleep facilities she criticizes in order to claim overtime compensation. She does not state this, only raising unspecified authentication concerns. The Courts in this and other Districts regularly expect counsel to stipulate to facts

unless in good faith under Fed. R. Civil Pro. Rule 11 there is a basis for not doing so, including authentication or here whether Exhibit A is representative of the sleep facilities. Although these exhibits are helpful and may be considered under the authority provided in the motion to dismiss, they are not necessary to prevail on the motion to dismiss. Plaintiff has not in the first instance sufficiently pled allegations to pursue her claim that her time sleeping is compensable due to inadequate sleep facilities; her listed assertions taken as true being legally insufficient.

The employee has the burden of alleging fact sufficient to proceed on her claim for any compensation sought. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal, 556* U.S. 662 (2009) and *Lundy v. Catholic Health Sys. of Long Island, Inc.* 711 F.3d 106 (2nd Cir. 2013) (Vague or generalized references to a schedule and occasional instances of work activity are insufficient warranting dismissal). This is also true for the claim that time sleeping is time worked and compensable. *Eustice v. Federal Cartridge Corp,* 66 F. Supp. 55 (D. Minn. 1946) cited as authority in 29 CFR §785.22 by the US Department of Labor's ("USDOL")..

USDOL recognizes that the ultimate decisions on interpretations of the act are made by the courts where the regulations in Part 785 published in Federal Register and found in the Code of Federal Regulations are to inform the public of the USDOL's FLSA interpretation for enforcement purposes. 29 CFR §785.2  These interpretive regulations are promulgated to obtain judicial deference under *Skidmore v. Swift*, 323 U.S. 134, 138 (1944). *Id*.  Administrative Bulletins, which lack these same procedures and weight, gives internal staff guidance of USDOL's interpretations and are changeable at will.  Compare the long standing specific USDOL position regarding sleep time in the its field service manual, section 31b12 Duty of 24 hours or more https://www.dol.gov/whd/FOH/FOH_Ch31.pdf cited in Defendants' dismissal motions supporting their regulatory interpretations to the oblique statements in the current

administrations rushed April 2016 Domestic Worker internal staff bulletin cited in Plaintiff's Response; although she specifically denied being a live in domestic service worker. FAC ¶20. Both conflicting positions are on USDOL's website, the latter without explanation for the change.[1]

As identified in the motion to dismiss, the Courts have delineated when under the FLSA a person is waiting to be engaged or engaged to wait for compensation purposes. Sleeping is generally not a work activity. USDOL recognizes this by identifying that time sleeping may in some circumstances be work. 29 CFR §785.20.  29 CFR §785.22 identifies under what circumstances sleeping may be compensable in 24-hour shift situations, referencing therein applicable judicial authority. Plaintiff's request that USDOL's sleep time regulations be found as ultra virus if her interpretation is not accepted by the court is without legal support.

Sleeping with one eye open in order to be able to respond to an actual specific work activity, attending to a resident's need during the sleep time, is not work under the FLSA. Plaintiff was not performing any act of supervision when sleeping. This conclusory claim defies common sense as called for in the judicial analysis applicable here. Next the length of or number of paragraphs in her complaint are not what matters; it's what factual allegations are actually asserted that is relevant for the compensation claim to proceed. Conclusory statements and restatement of the elements of the claim or applicable regulation are excluded in determining whether a complaint is permitted to proceed. Notwithstanding being put on notice of the clear pleading deficiencies in the original motion to dismiss, the FAC does not clarify, revise or

---

1 There is a difference of regulatory interpretation but the Court need not resolve that, although Defendant's have provided the basis for their interpretation based on the regulation and long standing USDOL guidance, as even under Plaintiff's interpretation she fails to allege facts to establish that at least five hours of continuous sleep was not regularly or even on a particular night provided.

supplement the limited, inadequate factual allegations. There is still no way from the FAC to reasonably or logically draw a credible inference that the sleep time interruptions totaled more than three hours on any night i.e. 5 hours of sleep -whether cumulatively or consecutively- were not provided. Plaintiff's Response avoids addressing this merely stating:

> "In her Complaint, Plaintiff alleges that her nights were frequently interrupted and that she usually did not receive 5 consecutive hours of sleep. See FAC ¶¶ 47-65. Plaintiff alleges that she had to track bathroom use by each of the five residents of the Nevada facility during the night, as well as provide a catheter to one resident, and deal with unusual resident behavior like tickling her toes, suggests that she was awoken many times each night. FAC ¶¶ 47-59, 72-73. Plaintiff alleges that during the night, "many residents had the custom of entering her room without first knocking." FAC ¶ 72. And that she would have to put residents back to bed after a bad dream, record nighttime bowel movements of the residents, and "check on residents using the restroom in the middle of the night to confirm whether they were urinating or having a bowel movement." FAC ¶ 49-52. Given "all of the interruptions during the night" Plaintiff "rarely had five continuous and uninterrupted hours during which she could sleep." FAC ¶ 63…"

Defendants take as true the types of interruptions that could have and probably did occur. How long, how often and when they occurred must be alleged in order to support the conclusory claim that she did not get 5 hours of sleep per night. In only one instance (not identified above) was Plaintiff specific as to how long, how often and when her sleep time was interrupted; the nights twice a month she waited for a resident to return from an event. FAC ¶ 55. Except for saying the other types of interruptions were not long (a few minutes) there is no additional specificity as to how often and when each occured in the FAC. FAC ¶57. The Response does not demonstrate that the FAC provides this information, simply making conclusory assertions, listing the types of interruptions and identifying in what paragraph they are found. Plaintiff cannot pick and choose when to be specific about how often and when the interruptions occurred to proceed with her claim for compensation for sleep time. *Lundy,* 711 F.3d. at 114, 115. The Response sheds no light on or answers the salient question; not what the sleep interruptions were

but when and how they occurred so that Plaintiff did not get 5 hours of sleep a night. Plaintiff fails to meet her pleading obligation as required by *Twombly, Iqbal and Lundy.*

The dilemma for the Defendants is clear and simple. Plaintiff was the only person at Nevada at night. She is the one who experienced the interruptions and she is the one who for timekeeping and compensation reported the sleep interruption, each of a few minutes of time to Defendants, for which she admits she was paid. FAC ¶¶ 57 and 59. When Defendants look at her time records, which were provided her with the original motion to dismiss they find no instance, occasionally or regularly, that supports her conclusory claim to be derived from the actual factual assertions identified as inadequate in the original motion to dismiss. Moreover, Plaintiffs Response does not explain where the FAC corrects the cited pleading deficiencies or makes new necessary factual allegations to support her conclusory assertion of insufficient uninterrupted sleep to support her compensation claim for 16 hours per shift for 2-3 years.

The first sentence of her Response argument on the prior page suffers from the deficiencies identified above. The second sentence confirms Defendants' position. She again merely relists the types of event and then from this simple non-quantitative litany of types of paid sleep interruptions concludes that this "**suggests that she was awoken many times each night".** The FAC allegations do not suggest this. Nor does the FAC state how often the identified types of sleep interrupts occur, either for one or more residents, on any night or on some nights to reasonably infer a total amount of sleep interruptions or how that interferes with her interpretation of 5 hours of continuous sleep. There simply no basis to state "**[g]iven "all of the interruptions during the night" Plaintiff "rarely had five continuous and uninterrupted hours during which she could sleep." FAC ¶ 63**."

The allegations must not simply suggest but must be specific enough so that a reasonable inference can be drawn to show a right to proceed on her claim under *Twombly, Iqbal and Lundy*. Defendants only have what Plaintiff reported and she admits she was paid for what she reported in terms of actual sleep time interruptions. In addition to the selective recall regarding specificity of sleep time interruptions identified above, it is also inconceivable if she allegedly strongly disagreed with the continuous shift policy (no express or implied agreement to the policy) that the time records based exclusively on her contemporaneously reported sleep time interruption would demonstrate such a great disparity compared to vague pleading and her conclusory statements. They are consistent with Defendants position that insufficient factual allegations are made in the FAC. Even if one assumes arguendo errors for some reason in her time records the errors would have to be substantial to support Plaintiff's after the fact conclusory assertion. As stated in the motion to dismiss even without reference to the time records, using common sense and making reasonable inferences from what she actually alleges she fails to identify sleep interruptions of an amount which provided her less than 5 hours of sleep.

Rather than discuss, distinguish or provide differing judicial determinations to that cited by Defendants confirming Plaintiff has impliedly agreed to the continuous shift policy, she relies on recent guidance by the current administration. That is not persuasive where the USDOL recognizes in 29 CFR §785.2 judicial decisions govern over interpretive rules in the Code of Federal Regulations. Here we are not even dealing with an interpretive rule. Therefore, reliance on this recent Bulletin has no persuasive weight or value.

Plaintiff's assertion that compensation is owed because of daylight savings relies simply on the literal language of the eight-hour period stated in 29 CFR §785.22 and nothing more. There was no work performed just the time change mandated by federal law. The FLSA and

9

federal daylight saving law both exist. They can and should be harmonized especially where the FLSA provides that work activities are to be compensated, not waiting to be engaged as sleep time is. When a person actually performs 1 more hour of work due to daylight savings that work rightfully must be compensated. Plaintiff's position illogically gives a windfall to the person who did no work as compared to one who actually worked. There is no judicial support under the FLSA for this result and her literal interpretation of §785.22 is not compelled or warranted.

As with sleep time Plaintiff must establish that the exchange of information in preparation to start the shift ("handoff") is compensable work activity. Defendants have provided the legal and factual support in the motion to dismiss that this minimal preparation is *de minimis* and/or part of permissible rounding even if the brief FAC factual allegations are accepted as true. Plaintiff's Response here as with her sleep time argument is conclusory, substantially amplifying without support what the FAC actually alleges. There were only five residents. The few minute sleep time interruption events in the FAC do not list any major medical or other issues that would suggest anything but a brief handoff exchange of information for a worker who must show up ready to begin her shift. Thus the actual time spent in the handoff is small or brief, variable and necessarily hard to administratively or precisely track. Plaintiff's failure to allege how frequent a next shift worker is late for the handoff is insufficient.

### **PLAINTIFF'S CLAIMS IN EQUITY ARE PREEMPTED BY THE FLSA**

As cited in the motion to dismiss the Common Law Equity claim is preempted by the FLSA. *Roman v. Maietta Constr.*, 147 F.3d 71 (1st Cir. 1998) ("[T]he plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA claim."); *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) (FLSA's comprehensive enforcement and remedial scheme preempts state based contract,

negligence, and fraud claims). Colorado common law equity does not incorporate the FLSA or supplement its protections such that Plaintiff's cases are inapposite. Preemption was not an issue or ruled on in *Young v. Dollar Tree Stores, Inc.*, 11–cv–1840–REB–MJW, 2012 WL 3704994, *2-3 (D. Colo., Aug. 24, 2012).

## **CONCLUSION**

WHEREFORE Defendants request this Honorable Court dismiss Plaintiff's First Amended Complaint and for such other relief as is just and appropriate.

Dated this 22nd day of December, 2016

>Respectfully submitted,
>WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
>
>By: /s/ Henry L. Solano
>Henry L. Solano
>Jason D. Melichar
>Wilson Elser Moskowitz Edelman & Dicker, LLP
>1225 17th Street, Ste 2750
>Denver, CO 80202
>(303) 572-5300
>Henry.Solano@wilsonelser.com
>
>Chris Forrest
>Miller & Steiert, P.C.
>1901 West Littleton Boulevard Suite 100
>Littleton, CO 80120-2058
>303-798-2525
>cjforrest@m-s-lawyers.com
>*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I herby certify that on this 22nd day of December, 2016, a true and correct copy of the foregoing *Defendants' Reply to Plaintiff's Reponse to Defendants Motion to Dismiss* was filed with the Court via CM/ECF and served thereunder and via e-mail to the following:

>Brian David Gonzales
>Brian D. Gonzales, The Law Offices of
>242 Linden Street
>Fort Collins, CO 80524
>970-214-0562
>303-539-9812 (fax)
>BGonzales@ColoradoWageLaw.com
>
>Alexander Neville Hood
>Towards Justice-Denver
>1535 High Street
>Suite 300
>Denver, CO 80218
>720-239-2606
>303-957-2289 (fax)
>alex@towardsjustice.org
>*Attorneys for Plaintiffs*

>>By:  /s/ Henry L. Solano
>>     Henry L. Solano