IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-cv-01804-PAB-NRN

FLAVIE BONDEH BAGOUE; and those similarly situated

    Plaintiffs,

v.

DEVELOPMENTAL PATHWAYS, INC.,
and CONTINUUM OF COLORADO, INC.,

    Defendants.

## REPLY TO RESPONSE [ECF DOC. 92] TO MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3) AND APPOINTMENT OF CLASS COUNSEL UNDER RULE 23(g) [ECF DOC. 91]

### INTRODUCTION

Defendants' Response [ECF Doc. 92] to Plaintiff's motion for class certification [ECF Doc. 91] attempts to skip to the merits by spending pages arguing the common issue of whether Defendants are covered by the Colorado Wage Order. *See* ECF Doc. 92 at 7-11. Despite this spilled ink, they then claim that there are no common issues *at all* to support class certification, let alone common issues that predominate. In this, and their other arguments, Defendants misstate and misapprehend Rule 23's requirements. The Motion should be granted, and the class certified.

### ARGUMENT

In their Response, Defendants principally argue that Plaintiff lacks the requisite elements of commonality and typicality for certification. *See* ECF Doc. 92 at 7-13. Defendants are wrong

1

on both counts.[1] Moreover, at a minimum, the Court should certify Plaintiff's 12-Hour Claim. *See James v. City of Dallas, Tex.*, 254 F. 3d 551, 563 (5th Cir 2001) ("[C]lass certification must be addressed on a claim-by-claim basis."). Defendants inappropriately lump Plaintiff's Sleep Time Claim together with her 12-Hour Claim and then focus almost entirely on arguments unique to the Sleep Time Claim. The Court should not fall for this sleight of hand.

A. **Commonality**

Defendants' argument regarding commonality seems to be that there are not enough common issues for certification. But that is the wrong standard. Satisfying commonality merely requires a single common issue. *See DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010) ("A finding of commonality requires only a single question of law or fact common to the class.").

A single common issue—for both the 12-Hour Claim and the Sleep Time Claim—is resoundingly whether the Colorado Wage Order applies to Defendants. *See* ECF Doc. 91 at 4-6. Indeed, that is the *only* issue standing between the entire class and liability for the 12-Hour Claim. *Id.* at 4-5. Plaintiffs also rely on the Wage Order for the Sleep Time Claim. *Id.* at 5-6.[2] In addition, the Sleep Time Claim's principal question—*i.e.*, whether life skills specialists usually received five continuous hours of sleep—is also subject to common class-wide proof, which also supports commonality. *See Tyson Foods, Inc. v. Bouaphakeo,* 136 S.Ct. 1036, 1045 (2016) ("[A] common question is one where the same evidence will suffice for each member to make a prima facie

---

[1] Defendants appear to concede the other elements: numerosity, adequacy, predominance, and superiority. *See* Fed. R. Civ. P. 23. Moreover, Defendants do not appear to challenge Plaintiffs' counsel sufficiency as class counsel.

[2] Plaintiff also has a path to state law liability for her Sleep Time Claim because the unpaid FLSA overtime would be wages under the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.* ECF Doc. 91 at 5-6 (explaining alternative approach).

showing or the issue is susceptible to generalized, class-wide proof." (brackets and quotations omitted)); *infra* at 7-8 (more expansively considering the issue in the context of predominance).

Defendants try to ignore the relevance of this common issue to class certification by instead arguing the issue's merits. ECF Doc. 92 at 7-11. But class certification is procedural. Arguing the merits of an otherwise common issue in this procedural posture is inappropriate and does not make the issue any less common. *See Abrams v. City of Albuquerque*, 10-0872 MV/RHS, 2013 WL 11336856, at *4 (D.N.M. Sept. 24, 2013) (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) (reversing and remanding denial of Rule 23 class certification where district court indicated its belief that plaintiff could not prevail on individual claims); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (reversing and vacating denial of Rule 23 class certification and warning that a district court, in making a Rule 23 certification decision, should avoid focusing on the merits of the underlying class action, for the merits are "not germane to the question of certification")). After all, if the Court skips to the merits in deciding class certification, it "essentially deprive[s] plaintiffs of their right to have the issues decided by a jury, or to at least have the court determine, under summary judgment standards, whether there was sufficient evidence to send the issue to the jury." *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1107 (10th Cir. 2001) (considering a FLSA motion for collective certification).

While Defendants' merits argument that they are not covered by the Wage Order should not be considered here, it also lacks merit. As Plaintiff argued extensively in response to the same merits arguments in Defendants' motion to dismiss, the opinion letter purporting to exempt Community Centered Boards from the Wage Order violates the Colorado Administrative Procedure Act and the due process clauses of the state and federal constitutions. *See* ECF Doc.

3

Doc. 44 at 7-10. With this conclusory opinion letter appropriately found legally irrelevant, it is hard to see how Defendants are not included in the Wage Order category covering "any business or enterprise engaged in providing medical, dental, surgical or other health services." 7 C.C.R. § 1103-1(2)(D). Defendants testified at length regarding the health services they provide in their 30(b)(6). *See, e.g.,* ECF Doc. 91-1 at 50:2-51:8 ("Q: …[S]o there is some coordination of care and there is some providing of care? A. Correct."), 75:13-79:14 (listing medical and health services provided by Defendants). This is in stark contrast to the Community Centered Board defendant in *Smith,* who the Court found did not provide health services. ECF Doc. 92 at 8-9.[3]

All of this is ample fodder for summary judgment or trial on the ***common*** issue of Wage Order coverage. But, for now, the fact that this is a common issue is sufficient to support certification.

**B. Typicality**

Defendants similarly misapprehend the typicality requirement. "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *See Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. June 1, 2011). Defendants concede that Plaintiff worked for them as a life skills specialist

---

[3] Importantly, contrary to Defendants' misleading description of *Smith*, the Court never reached the validity of opinion letter. Instead, it simply found that the defendant was not covered by the Wage Order. ECF Doc. 92-5. And while Defendants raise the advisory bulletin mentioned in *Smith* for the first time in response to this procedural motion, that should be given no more weight than the legally irrelevant opinion letter. *See Rags Over the Arkansas River, Inc. v. Colo. Parks and Wildlife Bd.*, 360 P.3d 186, 192 (Colo. App. 2015) ("[W]e may reject an agency's interpretation of its regulations if the language of the regulation compels a different meaning. . . . Indeed, where a regulation plainly requires a different interpretation, to defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." (quotation omitted)).

and that, in that role, she worked 2.5-Day Shifts. ECF Doc. 92 at 2-5. Plaintiff has established that her proposed class claims—*i.e.* the 12-Hour Claim and the Sleep Time Claim—challenge conduct that could be challenged by every member of the proposed class—*i.e.,* failure to pay overtime for hours worked in excess of 12 in a day and failure to pay for purported sleep time. *See* ECF Doc. 91 at 4-6. In short, Plaintiff's claims challenge the same conduct that could be challenged by the class. She is therefore typical pursuant to Fed. R. Civ. Proc. 23(a)(3).

**C. Predominance**

Read in its best light, Defendants' Response in fact challenges the predominance element of Rule 23 certification, which "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (internal quotation marks omitted).

As an initial matter, the fact that Defendants spend more than four of their nine pages of argument on the merits question of whether the Wage Order applies is telling of the importance of this common issue. *See* ECF Doc. 92 at 7-11. That issue predominates over all others, common or individualized.

With respect to the 12-Hour Claim, Wage Order coverage is the *only* issue. *See* ECF Doc. 91 at 10 (arguing same). With respect to the Sleep Time Claim, Defendants, predictably, attempt to claim that individualized issues predominate because Plaintiff only worked at one of the seven group homes where life skills specialists worked 2.5-Day Shifts and because her sleep interruptions were "unique." ECF Doc. 92 at 11-13. Defendants further attempt to argue that any interruption in Plaintiff's sleep would have been recorded pursuant to their policy of recording

5

time worked at night. But this entirely misinterprets the sleep time rule and misrepresents Defendants' reporting policy.

As this Court has already held with regard to the sleep time rule, "[i]n order for an employer to institute a policy of excepting sleep time, employees must usually enjoy an uninterrupted night's sleep." *Bagoue v. Developmental Pathways Inc*, ECF Doc. 60, 2017 U.S. Dist. LEXIS at *4 (D. Colo. Sep. 25, 2017) (citing 29 C.F.R. § 785.22(a) and quotations omitted). Defendants wrongly assume that the only sleep interruptions that count for the purposes of the rule are interruptions for work. But the rule is not limited to interruptions for work. Indeed, many of the interruptions complained of by Plaintiff would not have been recordable as work at all, but they were nevertheless interruptions. *See, e.g.,* ECF Doc 91-3 at 82:20:82:22 ("I was in bed around …3:00 a.m., …one of the clients came and then kiss [sic] my toes.").

Plaintiff articulated this distinction between unreportable interruptions and reportable work well in her deposition:

> Q: You would notify your employer if your sleep was interrupted?
> A: When we have a meeting, yes. I wasn't told that [sic] to report the interruption. I didn't -- I was told to report when I help the client.
> Q: Okay.
> A: And I did that when I do help the client. Yes.
> Q: Okay. And when you reported that you helped the client, you should be paid for that, correct?
> A: Yes. Correct.

ECF Doc 91-3 at 93:5-93:16 (emphasis added).

> Q: But my point is, you did report those times that you were performing tasks, but you did not report those other times when you were simply interrupted, correct?
> A: Correct.

*Id.* at 151:1-151:5. Defendants' response to Plaintiff's motion bolsters Plaintiff's testimony as

6

consistent with their policy, *i.e.,* only "work" was recorded. ECF Doc. 92 at 4-5 ("[Plaintiff] was not compensated for this sleep time *unless she was called to duty*"; "To the extent an employee was woken during sleep hours *and required to work*, that time was to be recorded, and the employee would be paid for the sleep time interruption"; and "[Plaintiff] was paid when she was *called to duty* during her designated sleep periods" (emphasis added)).

Thus, Defendants' records of work performed at night, while certainly constituting *some* interruptions for the purposes of the sleep time rule, hardly reflect *all* interruptions covered by the rule. Absent accurate time records reflecting all interruptions, Plaintiff—whether on a class or individual basis—is left to show that a life skills specialist could not usually receive an uninterrupted night's sleep based on the circumstances inherent in supervising the disabled residents under her care during the nighttime hours. As to that, Defendants have been clear that *the residents in these seven homes all had the same level of need*, *i.e.*, where a life skills specialist had to be present at night, but not necessarily awake. ECF Doc. 91-1 at 71:25-72:3 (Q: "[T]he residents in those homes require a similar level of need or a lack thereof during the nighttime hours?" A: "Typically, yes."). Defendants embrace this common level of need in their response. ECF Doc. 92 at 4 ("similar needs residents are grouped together"). Residents with higher anticipated levels of need reside in facilities where a life skills specialist is awake 24/7, and residents with lower levels of need reside in facilities where a life skills specialist may be off site overnight. ECF Doc. 91-1 at 37:6-37:15.

The nature of caring for disabled persons with this level of need at night is subject to class-wide circumstantial proof permitting a jury to make a class-wide inference that *no* life skills specialist could usually get more than five hours of uninterrupted sleep while supervising residents

with the common level of need at issue here. *See Menocal v. GEO Group, Inc.,* 882 F. 3d 905, 921-22 (10th Cir. 2018) ("The permissibility of a class-wide inference depends on whether the class members' claims are solvable with a uniform piece of circumstantial evidence or instead involve significant individualized or idiosyncratic elements."). Plaintiff ably offered an example of that kind of evidence in her deposition. ECF Doc 91-3 at 149:22-150:6 "And then I been [sic] interrupted because of the client's situation…. You know, they have developmental issue [sic]. And that interruption, it may be, it may look like a little something, one minute, two minutes, three minutes, but it has consequences."). And Plaintiff has produced absent class members as witnesses who were life skills specialists at six of the seven group homes at issue who will testify that Defendants' policies were implemented the *same* at every group home and that the circumstances prevented usually receiving five consecutive hours of sleep. *See* ECF Doc. 91-4 ¶ 4 (Nevada and Delaware House), 91-5 ¶ 4 (Nevada and Cedar House), 91-6 ¶ 4 (Nevada, 1st Avenue, Cedar, Canterbury, and Willow House), 91-7 ¶ 4 (Nevada House and substituting at other houses).[4]

Between the common issues of Wage Order coverage predominating and the common questions subject to class-wide proof, Plaintiff has established predominance. If at some point it becomes clear that individualized questions predominate, the Court can decertify the class. *See,*

---

[4] Defendants attempt to take issue with the declarations submitted by putative class members in support of the motion because they make the same or similar assertions. *See* ECF Doc. 92 at 13-14. First, these declarations are submitted *in addition* to deposition testimony and Defendants' discovery responses. They are not, as Defendants seem to imply, the only evidence supporting the Motion. Moreover, the declarations *are not* identical. They take pains to specifically identify where the witness worked, when the witness worked, and specific examples of the types of interruptions that life skills specialists could experience during their night shifts. To the extent they articulate experiences or policies uniformly, ***that is because they were uniform***. That uniformity is the crux of this Motion and to discount the declarations for that uniformity would put Plaintiffs in an impossible position.

8

*e.g., Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) (affirming decertification of class where discovery revealed that individual issues would predominate).

### D. The Class Definition

Without citation, Defendants claim that the class definition is inappropriate because it does not include temporal limits. ECF Doc. 92 at 14. Defendants' failure to support their argument with any authority should be sufficient for the argument to be ignored. Plaintiff includes no temporal limits because she intends to explore the possibility of tolling in merits discovery. After all, Defendants continually, and fraudulently, told their employees that they were only entitled to compensation during their uncompensated 8-hour sleep blocks for time that they were called to duty. Defendants made the same misstatement of the law to the Court in their motion to dismiss, and the Court disagreed. *See Bagoue*, ECF Doc. 60, 2017 U.S. Dist. LEXIS at *4. In fact, if Plaintiff could not usually get five hours of consecutive sleep, she is *entitled to compensation for all of the time deducted for sleep*. *Id.*

Nevertheless, rather than leaving the class definition without temporal limits, Plaintiff will concede to narrowing the definition to three years prior to the filing of the Complaint. *See* C.R.S. § 8-4-122 (maximum limitations period of three years). Plaintiff will continue to explore the possibility of tolling and move the Court accordingly to expand the class definition if appropriate. For now, Plaintiff agrees to the following amended class definition:

> ALL PEOPLE CURRENTLY OR FORMERLY EMPLOYED BY DEVELOPMENTAL PATHWAYS AND CONTINUUM OF COLORADO WHO WORKED 2.5-DAY SHIFTS AS LIFE SKILLS SPECIALISTS IN COLORADO *AFTER JULY 14, 2013*

### E. Class Certification Should Not Wait for Summary Judgment

Finally, Defendants attempt a bait and switch in suggesting that class certification should

wait for summary judgment. Defendants agreed to, and this Court approved, a bifurcated discovery schedule whereby class and collective action issues were considered first and merits discovery would take place only after this Court ruled on class and collective certification. *See* ECF Doc. 32 (entitled "Scheduling Order for Class Certification Only"). Indeed, the scheduling order entered does not even permit experts for the class certification portion of discovery. *Id.* at 8. That scheduling order has been amended after a stay and failed attempts at settlement to reset the deadlines for class certification and dispositive motions for this class certification phase. *See* ECF Docs. 70, 86, 90. But the scope of the order has never expanded beyond class certification. And while it may make sense to proceed with some partial summary judgment motions along with the class certification briefing, full-fledged summary judgment briefing cannot occur until after merits discovery has occurred. And ruling on full-sledged fact-based summary judgment before that would make little sense. *See* Fed. R. Civ. P. 56(d) (allowing the Court to defer summary judgment if party has not had ample opportunity for discovery).

## CONCLUSION

For the forgoing reasons, Plaintiff's motion should be granted.

Respectfully Submitted,

s/Alexander Hood
Alexander Hood, Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Brian D. Gonzales
The Law Offices of Brian D. Gonzales
242 Linden Street
Fort Collins, CO 80524
Tel.: 970-214-0562
Fax: 303-539-9812

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on November 2, 2018, I filed a true and correct copy of the forgoing using this Court's CM/ECF filing system, which served the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.

                                                        s/Alexander Hood
                                                        Alexander Hood