IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-01804-PAB-NRN

FLAVIE BONDEH BAGOUE, and those similarly situated,

      Plaintiff,

v.

DEVELOPMENTAL PATHWAYS, INC. and
CONTINUUM OF COLORADO, INC.,

      Defendants.

---

## ORDER

---

      This matter is before the Court on plaintiff's Motion for Class Certification Under Rule 23(b)(3) and Appointment of Class Counsel Under Rule 23(g) [Docket No. 91], Defendants' Motion for Summary Judgment [Docket No. 98], and plaintiff's Motion for Partial Summary Judgment Against Continuum of Colorado, Inc. as to Plaintiff's 12-Hour Overtime Claim [Docket No. 99].  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

      Defendant Developmental Pathways, Inc. ("Developmental Pathways") is a not-for-profit community-centered board that serves individuals with developmental disabilities and their families.  Docket No. 98 at 3, ¶¶ 1-2.[1]  Defendant Continuum of

---

[1] All facts are undisputed unless otherwise noted.  A "community-centered board" is a private corporation, designated pursuant to Colo. Rev. Stat. § 25.5-10-209, that "provides case management services to persons with developmental disabilities, is authorized to determine eligibility of such persons within a specified geographical area,

Colorado, Inc. ("Continuum") is a service agency that provides services for persons with intellectual and developmental disabilities. *Id*. ¶¶ 4-5.[2] Developmental Pathways and Continuum were a single legal entity until 2012. *Id*. at 4, ¶ 9. Continuum operates group homes for the developmentally disabled, which are designed to help individuals with developmental disabilities to live as independently as possible, throughout Colorado. *Id*. at 3-5, ¶¶ 6, 12. One of those group homes is the Nevada House. *Id*. at 4, ¶ 11.

Plaintiff Flavie Bondeh Bagoue worked for defendants for approximately twelve total years. *Id*.[3] Beginning in 2012, plaintiff worked at the Nevada House as a Life Skills Specialist ("LSS"). *Id*. Plaintiff's principal job duty was to provide day-to-day care for the residents of the Nevada House. *Id*. at 5, ¶ 13.[4] While employed at the Nevada House, plaintiff worked under a "continuous shift policy." Docket No. 33 at 3, ¶ 14.[5] Under the continuous shift policy, plaintiff was scheduled to be at the Nevada House for fifty-six consecutive hours, consisting of two sixteen-hour work shifts, one eight-hour

---

and serves as the single point of entry for persons to receive services and supports." Docket No. 98 at 4, ¶ 7; *see* Colo. Rev. Stat. § 25.5-10-202(4).

[2] A "service agency" is "a person or any publicly or privately operated program, organization, or business providing services or supports for persons with intellectual and developmental disabilities." *See* Colo. Rev. Stat. § 25.5-10-202(34).

[3] The parties dispute whether, after 2012, plaintiff was jointly employed by both defendants or solely employed by Continuum. *See* Docket No. 103 at 3-4, ¶ 10.

[4] The parties dispute whether plaintiff's "day-to-day care" of the residents included providing medical care. *See* Docket No. 103 at 4-5, ¶ 13.

[5] The parties also call this policy the "2.5 day shift." *See* Docket No. 98 at 5, ¶ 14.

work shift, and two sleeping periods.  Docket No. 98 at 5, ¶¶ 14, 16.  Continuum used an electronic time clock to track plaintiff's hours worked.  *Id*. at 6, ¶ 18.

On July 14, 2016, plaintiff filed this lawsuit.  Docket No. 1.  Plaintiff alleges that defendants failed to adequately compensate plaintiff for certain categories of time including time spent communicating with other workers at the beginning and end of her shifts ("pre- and post-shift time"), Docket No. 33 at 5, ¶¶ 34-35; sleep time, which was regularly interrupted such that plaintiff did not usually get five hours of continuous and uninterrupted sleep, *id.* at 9, ¶ 59; and extra time worked as a result of the change to daylight savings time.  *Id.*, ¶¶ 60-61.  Plaintiff also alleges that the sleeping facilities provided by defendants were inadequate because they were not private quarters, separated from the residents of the group home.  *Id.* at 10, ¶ 66-67.  Plaintiff claims that the staff room set aside for sleeping did not have amenities for recreation, offered little privacy, was illuminated by hallway lights, and that the residents of Nevada House would enter her sleeping quarters without permission.  *Id.* at 10-12, ¶¶ 66-74.  Plaintiff alleges that she never entered into a formal agreement with defendants to deduct sixteen hours of sleep time from her paychecks.  *Id.* at 12, ¶ 76.  Plaintiff brings claims for relief (1) under the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §§ 8-4-101, *et seq.*, Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101, *et seq.*, and Colorado Minimum Wage Order ("Wage Order"), 7 Colo. Code Regs. § 1103-1 (First Claim); (2) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (Second Claim); and (3) for equitable relief under Colorado law (Third Claim).  Docket No. 33 at 18-21, ¶¶ 114-135.  Plaintiff's First and Third Claims are brought as a class

action pursuant to Fed. R. Civ. P. 23.  *Id*. at 15-17, ¶¶ 95-109.  Plaintiff's Second Claim is brought as a collective action pursuant to 29 U.S.C. § 216(b).

On August 22, 2018, plaintiff filed a motion for conditional certification of her Second Claim as a collective action.  Docket No. 85.  On September 21, 2018, plaintiff filed a motion for class certification under Rule 23(b)(3).  Docket No. 91.  On November 19, 2018, defendants filed a joint motion for summary judgment on all claims.  Docket No. 98.  That same day, plaintiff filed a motion for partial summary judgment, asking that the Court find that Continuum is covered by the Wage Order and enter summary judgment against Continuum as to the First Claim.  Docket No. 99.  On March 25, 2019, the Court conditionally certified the Second Claim as a collective action and approved modified notice to the potential opt-in plaintiffs.  Docket No. 111.  Twenty-six additional plaintiffs have opted in to the collective action.  Docket Nos. 83, 87, 112, 113, 114, 115, 116, 117, 119, 120.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

The Court turns first to the parties' cross-motions for summary judgment.

As an initial matter, plaintiff argues that defendants' motion should be denied on the basis that it is "premature" pursuant to Fed. R. Civ. P. 56(d). Docket No. 103 at 13-

14.  Plaintiff argues that, under the discovery schedule approved by the Court, "merits

discovery would take place only after [the] Court ruled on class and collective

certification."  *Id*. at 14.

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant

shows by affidavit or declaration that, for specified reasons, it cannot present facts

essential to justify its opposition, the court may: (1) defer considering the motion or

deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order."  The Court disagrees with plaintiff that the motion is

premature.  First, the affidavit submitted by plaintiff's counsel is insufficient.  *See*

Docket No. 103-5.  To invoke Rule 56(d), the affidavit must "identify[] the probable facts

not available," "what steps have been taken to obtain these facts," and "explain how

additional time will enable [her] to rebut movant's allegations [that there is] no genuine

issue of fact."  *See Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th

Cir. 2006) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522

(10th Cir. 1992)).  The affidavit submitted by plaintiff's counsel fails to identify what, if

any, facts plaintiff would expect to find during additional discovery, as well as what

steps have been taken to obtain these facts before the close of discovery.  *See Garcia

v. U.S. Air Force*, 533 F.3d 1170, 1179-80 (10th Cir. 2008) (holding that district court did

not abuse discretion in denying request where affidavit submitted by plaintiffs' counsel

failed to identify specific facts which would create a genuine issue of material fact and

identify what steps had been taken to obtain such facts, and where plaintiffs had six

months to conduct discovery prior to their request).  Although plaintiff suggests that the

scheduling order, *see* Docket No. 70, provided only for limited discovery, the scheduling order appears to contemplate allowing additional discovery by defendants only, not by plaintiff, if the class is conditionally or collectively certified. The Court is not convinced that plaintiff's interpretation of the scheduling order as providing for class discovery only explains why plaintiff would be unable to obtain the facts needed to defeat summary judgment. *See Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1151 (10th Cir. 2006) (noting that Rule 56(d) "does not compel the court to grant a continuance to a party that has been dilatory in conducting discovery").[6] Moreover, on September 7, 2018, the parties asked the Court to set a dispositive motions deadline for November 19, 2018. *See* Docket No. 86. Nowhere in the parties' joint motion does plaintiff represent that the summary judgment motions would be limited only to class- or collective-wide issues. Thus, the Court finds that defendants' motion for summary judgment is not premature and turns to the merits of the cross-motions.

## A. Plaintiff's First Claim - State Law

Plaintiff moves for partial summary judgment against Continuum on her claim for overtime for working more than twelve hours in a given day on the basis that Continuum is covered by the Colorado Minimum Wage Order ("Wage Order"). Docket No. 99. Defendants move for summary judgment on the entirety of plaintiff's First Claim, arguing that they are not covered by the Wage Order. Docket No. 98.

---

[6] The provisions of what used to be Fed. R. Civ. P. 56(f) were moved to subsection 56(d) without any substantial change in 2010. *See* 10B Mary Kay Kane, *Federal Practice & Procedure* § 2740 (4th ed. Aug. 2019 update) (noting that "precedent prior to 2010 citing Rule 56(f) is fully applicable to current Rule 56(d)").

### *1. Application of the Colorado Minimum Wage Order*

The Wage Order "regulates wages, hours, working conditions and procedures for certain employers and employees" in four "industries": "(A) Retail and Service; (B) Commercial Support Service; (C) Food and Beverage; [and] (D) Health and Medical." 7 Colo. Code Regs. § 1103-1:1. Plaintiff cannot recover on her First Claim under the Wage Order if defendants do not fall into one of the covered industries. *Simmons v. Boys & Girls Club of the Pikes Peak Region*, No. 16-cv-01461-RBJ, 2017 WL 4337931, at *1 (D. Colo. Sept. 29, 2017).

Colorado courts construe regulations like the Wage Order by applying the same principles used to construe statutes. *Rags Over the Arkansas River, Inc. v. Colorado Parks & Wildlife Bd.*, 360 P.3d 186, 192, *as modified on denial of reh'g* (Colo. App. 2015). Under Colorado law, the primary objective of statutory construction "is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole." *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010). If the language is ambiguous, Colorado courts look beyond that language "for other evidence of legislative intent and purpose, such as legislative history or other rules of statutory construction." *Crandall v. City and Cty. of Denver*, 238 P.3d 659, 662 (Colo. 2010). In construing particular terms, Colorado courts "consider the context of the term at issue and construe it consistently with other terms in the statutory framework." *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

For the purposes of the instant motion, the Court considers whether defendants are covered by the Wage Order because they are in either (a) the "Health and Medical" industry or (b) the "Retail and Service" industry. *See* Docket No. 99 at 3-6; Docket No. 103 at 13, 19-20.

### a.    "Health and Medical" Industry

The Wage Order defines the "Health and Medical" industry to include

> any business or enterprise engaged in providing medical, dental, surgical or other health services including but not limited to medical and dental offices, hospitals, home health care, hospice care, nursing homes, and mental health centers, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. § 1103-1:2(D).  Defendants argue that they are not in the "Health and Medical" industry.  In defendants' view, what makes "Health and Medical" a distinct industry is whether a business provides "health services."  Docket No. 98 at 14, 16. Defendants argue that they are not hospitals, home health care providers, hospice care providers, nursing homes, or mental health centers, and that they do not provide health services to their clients.  *Id*.  Defendants also argue that the Wage Order does not apply because the Colorado Department of Labor and Employment's ("CDLE") 2012 Advisory Bulletin (the "Advisory Bulletin") directs that "[c]ommunity [c]entered [b]oards and service agencies that are planned, designed, organized, operated, and maintained to provide services to and for individuals with developmental disabilities" are excluded from the Wage Order.  *Id*. at 16-17 (citing Docket 98-9 at 71).  Finally, defendants argue that a recent state court decision applying the Wage Order confirms that defendants' interpretation of the law is correct.  *Id*. at 18-19 (citing Docket No. 98-8).  In her cross-

motion, plaintiff argues that Continuum provides "health and medical services" to its residents and is thus covered by the Wage Order.  Docket No. 99 at 3-4.

Some principles can be drawn from cases interpreting the Wage Order.  The definitions in the Wage Order must be read "as a whole." *Blanco v. Xtreme Drilling and Coil Servs., Inc.*, No. 16-cv-00249-PAB-CBS, 2017 WL 951150, at *3 (D. Colo. Mar. 8, 2017).  In determining whether the Wage Order applies to a particular employer, "courts look to whether the employer's operations fit the industry definition, not whether any of the company's employees perform services that may be supplied in a particular industry." *Id*.  Although the Court should not take the list of specific examples of businesses that fall within a certain category as "exclusive," the Court should not "ignore the common theme" of the industry definition.  *Cartier v. W. Elec. Coordinating Council*, No. 14-cv-00079-WJM-MJW, 2015 WL 3581346, at *5 (D. Colo. June 9, 2015).  Moreover, a business covered by the "Health and Medical" section of the Wage Order must "offer services in some capacity to the general public." *Menocal v. GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1130 (D. Colo. 2015).  In *Menocal*, the court concluded that, although defendant had a "medical facility" at its private, for-profit detention facility, it was not covered by the Wage Order because it did not provide health or medical services to the general public.  *Id*. at 1130.

A Colorado state court has held that community-centered boards like Developmental Pathways are not covered by the Wage Order.  *See* Docket No. 98-8 (order in *Smith v. Mountain Valley Developmental Servs., Inc.*, 18-cv-30026 (Garfield Cty. Dist. Ct. April 12, 2018) ("*Smith*")).  The court in *Smith* concluded that, because a

community-centered board (1) is not one of the explicitly listed industries, (2) does not provide "medical, surgical or any other health services," and (3) merely coordinates with third-party providers to access medical and health care services, it is not a "Health and Medical" industry for purposes of the Wage Order. *Id*. at 4-5.

Read as a whole, the "common theme" of the "Health and Medical" industry definition is whether an entity is primarily providing health care services. *See* 7 Colo. Code Regs. § 1103-1:2(D); *Cartier*, 2015 WL 3581346, at *5. "[H]ospitals, home health care [providers], hospice care [providers], nursing homes, or mental health centers" all primarily provide health care services. In contrast, defendants primarily provide services that help individuals with developmental disabilities to "live as independently as possible." *See* Docket No. 98 at 5, ¶ 12. Although some of defendants' employees may provide medical services, defendants' operations as a whole do not fit within the "Health and Medical" industry. *See Blanco*, 2017 WL 951150, at *3 (noting that Wage Order coverage does not attach merely because "any of the company's employees perform services that may be supplied in a particular industry"); *Smith* at 4-5 (holding that a community-centered board is not covered by the Wage Order). Moreover, to the extent that defendants offer health care services, they do not offer those services to the general public. Rather, they offer services only to individuals who are determined to have intellectual and developmental disabilities. *See* Colo. Rev. Stat. § 25.5-10-202(26)(b) ("'[P]erson with an intellectual and developmental disability' means a person determined by a community-centered board to have an intellectual and developmental disability"); § 25.5-10-211. Because a person must first be "eligible" to access any

11

services provided by defendants, they do not provide any health services to members of the "general public" and are thus not covered by the Wage Order.  *See Menocal*, 113 F. Supp. 3d at 1130.[7]

The Court's conclusion is supported by the Advisory Bulletin.  *See* Docket No. 98-9 at 1.  As relevant here, the Advisory Bulletin states:

> DEVELOPMENTAL DISABILITY COMMUNITY CENTERED BOARDS AND SERVICE AGENCIES.  Community Centered Boards and service agencies that are planned, designed, organized, operated, and maintained to provide services to and for individuals with developmental disabilities as defined in C.R.S. 27-10.5-202 are exempt from all provisions of the Wage Order.

*See* Docket No. 98-9 at 71.  Plaintiff does not dispute that Developmental Pathways is a "community-centered board" and that Continuum is a "service agency" within the meaning of the Bulletin.  *See* Docket No. 103 at 2, ¶¶ 3-4.  Although the Colorado Division of Labor has recently withdrawn the Advisory Bulletins on the grounds that they did not fully incorporate "many changes to wage law and policy" since they were issued and therefore are not entitled to deference, *see* Docket No. 118-1, the Court finds the Advisory Bulletin here to have some relevance.  *See Brunson v. Colo. Cab Co., LLC*, 433 P.3d 93, 99-100 (Colo. App. 2018) (concluding that the Advisory Bulletin is entitled to respect to the extent it has the power to persuade).[8]  Plaintiff does not identify any

---

[7] Plaintiff suggests that the services offered by defendants are available to "any person" who requests an evaluation.  *See* Docket No. 103 at 18.  However, while any person may request an evaluation, only a person who is "eligible to receive services" because he or she has been determined to have an intellectual and developmental disability may access defendants' services.  *See id*. (citing Colo. Rev. Stat. § 25.5-10-211).

[8] The Court grants plaintiff's Motion for Leave to File Supplemental Authority in Support of Plaintiff's Motion for Summary Judgment (ECF Doc. 99) and in Opposition to

change in wage law or policy since 2012 that would indicate that the Advisory Bulletin's interpretation of the Wage Order was incorrect as a matter of law and has been superceded by a change in the law. In fact, plaintiff cites to no authority that has adopted her interpretation of the Wage Order.[9] Instead, plaintiff argues that there is a dispute of fact as to whether some of defendants' employees provide "Health and Medical" services. *See* Docket No. 103 at 16-17. Defendants assert that the principal job duties of LSSs like plaintiff were to "provide day-to-day care" for residents by "cooking meals, cleaning the house, taking residents to doctors' appointments and to church, grocery shopping, and other like needs," *see* Docket No. 98 at 5, ¶ 13, while plaintiff contends that LSSs were "also responsible for providing medical care." *See* Docket No. 103 at 4-5, ¶ 13. Even accepting plaintiff's contention, the fact that some of defendants' employees perform services that may be supplied in the "Health and Medical" industry does not indicate that Wage Order coverage attaches. *See Blanco*, 2017 WL 951150, at *3. Plaintiff also has failed to establish a dispute of fact as to whether defendants provide any health and medical services to the general public, as opposed to providing health and medical services solely to persons who have been determined to have an intellectual and developmental disability. *See Menocal*, 113 F. Supp. 3d at 1130.

---

Defendants' Motion for Summary Judgment (ECF Doc. 98) [Docket No. 118].

[9] Indeed, plaintiff suggests that authorities that have interpreted the Wage Order are either wrong or have no value. *See* Docket No. 103 at 17 (describing *Menocal* as "simply wrong"); 23-24 (explaining that *Smith* involves a community centered board in "a different part of . . . Colorado" and that the Advisory Bulletin is "meaningless").

The Court concludes that defendants are not in the "Health and Medical" industry for purposes of the Wage Order.

### b. "Retail and Service" Industry

The Wage Order defines the "Retail and Service" industry to include

> any business or enterprise that sells or offers for sale, any service, commodity, article, good, real estate, wares, or merchandise to the consuming public, and that generates 50% or more of its annual dollar volume of business from such sales. The retail and service industry offers goods or services that will not be made available for resale. It also includes amusement and recreation, public accommodations, banks, credit unions, savings and loans, and includes any employee who is engaged in the performance of work connected with or incidental to such business or enterprise, including office personnel.

7 Colo. Code Regs. § 1103-1:2(A).

The Court finds that defendants are not in the "Retail and Service" industry. Defendants both generate their income from "donations and public funds," rather than the sale of their services to the consuming public. *See* Docket No. 98 at 8-9, ¶¶ 35, 43. Plaintiff disputes this fact on the basis of defendants' 2016 tax returns, which indicate that more than fifty percent of defendants' revenue comes from "[p]rogram service revenue." *See* Docket No. 103-1 at 2; Docket No. 103-4 at 2. However, plaintiff does not explain how "program service revenue" is equivalent to a "sale . . . to the consuming public." *See* 7 Colo. Code Regs. § 1103-1:2(A). As plaintiff admits, defendants "contract[] with the State of Colorado to provide services to clients." *See* Docket No. 103 at 9-11, ¶¶ 36, 44. A state agency is not included within the term "consuming public." *See Black's Law Dictionary* 335 (8th ed. 2004) (defining "consumer" as "[a] person who buys goods or services for personal, family, or household use, with no

intention of resale; a natural person who uses products for personal rather than business"). Accordingly, there is no factual basis to infer that defendants' "program services revenue" comes from sales to the consuming public as opposed to contracts with the State. The Court thus concludes that defendants are not included within the "Retail and Service" industry.

Because defendants are not within either the "Health and Medical" or "Retail and Service" industries, they are not covered by the Wage Order. Thus, plaintiff is unable to recover on her First Claim under the Wage Order.[10] Accordingly, the Court grants defendants' motion for summary judgment as to plaintiff's claims under the Wage Order and Colorado Minimum Wage Act, and denies plaintiff's motion for partial summary judgment.

## 2. Colorado Wage Claim Act

Defendants' motion for summary judgment appears to assume that plaintiff has no path to recovery for her First Claim if the Wage Order does not apply to them. However, plaintiff argues that at least some portion of the First Claim is recoverable under the CWCA. Docket No. 103 at 15-16. Defendants respond by arguing that this is not supported by the complaint and that plaintiff should not be allowed to amend the

_____

[10] Plaintiff argues that, if she was jointly employed by Developmental Pathways, it would be liable under the Wage Order because Continuum is covered by the Wage Order. *See* Docket No. 103 at 22-23. As neither Developmental Pathways nor Continuum is covered by the Wage Order, the Court need not resolve whether plaintiff was jointly employed by Developmental Pathways.

complaint at this stage.  Docket No. 107 at 7-8.  Plaintiff filed a surreply, pointing out that she alleged these claims in the complaint.  Docket No. 110-1.[11]

The Court agrees with plaintiff.  The caption of plaintiff's First Claim indicates that it is brought for "unpaid straight time" as well as "overtime," and references both the CWCA and the Colorado Minimum Wage Act.  *See* Docket No. 33 at 18.  The First Claim distinguishes between two types of claims under state law: claims that plaintiff was "not paid for some of the hours she worked," i.e. "unpaid straight time," and claims that she was "not paid overtime for hours worked in both in excess of [forty] hours a week and in excess of [twelve] hours a day," i.e. "overtime."  *See id*., ¶¶ 117-118. While the complaint may not be a model of clarity, plaintiff's assertion that she may recover for allegedly unpaid straight time under the CWCA does not amend the complaint.   The unpaid straight time claim is for (1) time required to work before the beginning and after the end of her shift and (2) hours spent on night duty.  *Id*.[12]

---

[11] Plaintiff filed a Motion for Leave to File Surreply to Defendants' Motion for Summary Judgment (ECF Doc. 98) [Docket No. 110] in response to defendants' reply brief.  Granting leave to file a surreply is part of the "supervision of litigation" and thus falls within the discretion of the district court.  *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006).  Under certain circumstances, a court must allow a non-movant to file a surreply to respond to any new arguments in the moving party's reply.  *Id*. ("[I]f the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials." (internal citations omitted)).  Plaintiff contends that defendants' reply brief argues, for the first time, that plaintiff attempts to impliedly amend her complaint through her response brief.  Docket No. 110.  The Court agrees that this is a new argument raised in the reply brief and will grant plaintiff's motion.

[12] Although the complaint included a claim for unpaid time due to Daylight Savings Time, *see* Docket No. 33 at 18, ¶ 117, plaintiff agrees to the dismissal of that claim in her response brief.  *See* Docket No. 103 at 13 (plaintiff has "no claim" for unpaid time resulting from Daylight Savings Time).

Because defendants have not made an affirmative argument that they are entitled to summary judgment, the Court denies summary judgment for defendants as to plaintiff's CWCA claims. However, neither party has briefed how the CWCA provides a pathway for plaintiff to recover. It is unclear to the Court whether the CWCA provides a substantive right for plaintiff to recover compensation on her unpaid sleep time claim. *See, e.g.*, *Barnes v. Van Schaack Mortg.*, 787 P.2d 207, 210 (Colo. App. 1990) (for the purposes of a CWCA claim, "the employee's substantive right to compensation and the conditions that must be satisfied to earn such compensation remain matters of negotiation and bargaining, and are determined by the parties' employment agreement, rather than by the statute"). Moreover, plaintiff's motion for class certification fails to explain in detail what "common questions" under the CWCA entitle her to class certification. *See* Docket No. 91 at 8 (identifying three issues that "support a finding of commonality," none of which reference the CWCA). Accordingly, the Court will deny plaintiff's motion for class certification without prejudice in order to give plaintiff, and defendants, an opportunity to brief issues regarding plaintiff's CWCA claim.

## B.   Plaintiff's Second Claim – FLSA

Plaintiff claims that defendants violated the FLSA by failing to pay her (and the collective) for work performed (1) before the beginning and after the end of her shift and (2) hours spent on night duty. Docket No. 33 at 20, ¶¶ 129-131.[13]

---

[13] As discussed above, plaintiff has abandoned her claim for unpaid time due to Daylight Savings Time. *See* Docket No. 33 at 20, ¶ 130; Docket No. 103 at 13.

### 1. Pre- and Post-Shift Time

Plaintiff claims that defendants failed to pay her for time worked before the beginning and after the end of her scheduled shifts.  Docket No. 33 at 20, ¶ 131.  Defendants make three arguments as to why they are entitled to summary judgment on this claim.  Docket No. 98 at 20-23.  First, defendants argue that the pre- and post-shift time is non-compensable because it occurred either before or after the principal activity plaintiff was employed to perform.  Second, defendants claim that, if the time is compensable, it is nonetheless de minimis and not subject to the FLSA.  Third, defendants state that, if the time is compensable and not de minimis, the time is covered by a permissibly neutral rounding policy.

### a. Compensable Time

Under the FLSA, employers are not liable for failure to pay an employee wages or overtime compensation for "activities which are preliminary to or postliminary" to "the principal activity or activities which [the] employee is employed to perform" that occur "either prior to . . . or subsequent to the time on any particular workday" the employee commences or ceases the principal activity or activities.  29 U.S.C. § 254(a).  On the other hand, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'" for purposes of § 254(a).  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); *see also Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286-87 (10th Cir. 2006).  Federal regulations distinguish between an activity without which an employee "cannot perform his principal activities," which is integral to a principal activity, and an

activity that is "merely a convenience to the employee," which is not. 29 C.F.R. § 785.24.

Defendants argue that the pre- and post-shift time is not integral or indispensable to the principal activities of plaintiff's job because (1) plaintiff "could not remember how frequently she may have stayed after her shift," (2) plaintiff's time records show that she was compensated for conversations with the incoming or outgoing LSS that lasted more than a few minutes, and (3) all information necessary for plaintiff was available in "daily logs" prepared each day. *See* Docket No. 98 at 21. However, plaintiff has presented evidence that she was instructed to arrive before her shift in order to count medication for residents and that she was required to stay after her shift in order to update the incoming LSS. *See* Docket No. 103 at 11-12, ¶¶ 49-50.[14] Defendants' arguments fail to explain why time where plaintiff was required to count medication and to update the incoming LSS would not be "integral and indispensable" to the operation of defendants' business. *See Smith*, 462 F.3d at 1290 (holding that "an activity is integral and indispensable to the principal activities only if such work is necessary to the employer's business and performed by the employees in the ordinary course of that business" (internal quotations and alterations omitted)). Moreover, defendants' argument that plaintiff was compensated for conversations that lasted more than a few minutes suggests that defendants themselves viewed work done before and after each shift as compensable time, providing that the work lasted

_____

[14] Defendants contend that the Court should deem admitted the fact that any pre-shift time was purely "to engage in personal activities with no work activities required to be performed." *See* Docket No. 98 at 10, ¶ 49; Docket No. 107 at 6, ¶ 49. However, defendants do not explain why plaintiff's testimony that she was instructed to arrive early to count medication fails to rebut defendants' assertion.

more than seven minutes (under defendants' rounding policy).  Because a factual dispute exists as to what defendants required of plaintiff, the Court finds that defendants have not met their burden to show that they are entitled to summary judgment on this basis.

### b.  De Minimis Exception

"In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded . . . [as] de minimis."  29 C.F.R. § 785.47.  "This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities."  *Id*.  In order to determine whether compensable time is de minimis, the Court considers "the amount of daily time spent on the additional work."  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998) (quoting *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)).  In addition, the Court must consider: "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether 'the claimants performed the work on a regular basis.'"  *Id*. (quoting *Reich v. New York City Transit Authority*, 45 F.3d 646, 652 (2d Cir. 1995)).

Defendants have not shown that the pre- and post- shift time falls within the de minimis exception.  As a threshold matter, it is unclear to the Court that the de minimis exception applies given that defendants use electronic time clocks to record employees' comings and goings.  *See* 29 C.F.R. § 785.47 (noting that the exception applies when

time "cannot as a practical administrative matter be precisely recorded").[15]  Even

assuming *arguendo* that the de minimis exception could apply in this situation, the

Court finds that the factors collectively favor plaintiff.  The amount of daily time spent is

small and weighs in defendants' favor.  Plaintiff's time records indicate that the pre- and

post-shift time infrequently exceeded ten minutes per shift, each shift covering a two-

and-a-half day period.  *See* Docket No. 98-7; *Reich*, 144 F.3d at 1333 (citing *Lindow*,

738 F.2d at 1062, for the proposition that "most courts have found daily periods of

approximately [ten] minutes de minimis").  The other factors, however, favor plaintiff.

First, the Court agrees with plaintiff that, as defendants are already recording precise

time, there is little to no practical administrative difficulty of recording the additional

time.  *See* Docket No. 103 at 27.  As to the second factor, the Court finds that, after

aggregating the total number of employees involved in this claim, which has been

conditionally certified as a collective action, over the applicable time period, the size of

the claim is significant.  *See Reich*, 144 F.3d at 1334 (noting that it is "appropriate to

consider an aggregate based on the total number of workers").  Finally, the Court finds

that the third factor weighs in favor of plaintiff, as – taking all factual inferences in

plaintiff's favor – there is evidence that defendants required regular pre- and post-shift

---

[15] *Lyons v. Conagra Foods Packaged Foods, LLC*, 899 F.3d 567 (8th Cir. 2018),
which defendants rely upon, is distinguishable.  The *Lyons* court concluded that time
spent checking in and checking out tools was subject to the de minimis exception, in
part because compensating employees for that time would create the "additional
administrative burden" of comparing tool check-in and check-out times to time-clock
records.  *Lyons*, 899 F.3d at 584.  Here, there is no evidence that defendants would
incur any additional administrative burden to compensate employees for pre- and post-
shift time.

time of plaintiff.  *See* Docket No. 103 at 11-12, ¶¶ 49-50.  Thus, compensation for pre- and post-shift time does not fall within the de minimis exception.

### c. Rounding Policy

Defendants argue that their policy of rounding any pre- or post-work time that did not exceed seven minutes to zero is a permissible "rounding" policy.  *See* Docket No. 98 at 23.  The federal rounding regulation, 29 C.F.R. § 785.48(b), reads:

> 'Rounding' practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work.  For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

"The federal rounding rules have long been applied to federal claims brought pursuant to the FLSA."  *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*, 821 F.3d 1069, 1075-76 (9th Cir. 2016).  An employer's rounding policy complies with the federal rounding rules if it is neutral, "permit[ting] both upward and downward rounding" such that it will "average out in the long-term."  *Id*. at 1077 (emphasis removed).

Defendants' rounding policy is neutral on its face, as the policy is to round all time punches "without an eye towards whether the employer or the employee is benefitting from the rounding."  *See Corbin*, 821 F.3d at 1078-79; *see also* Docket No. 98 at 10, ¶ 52 (time records showing that she was compensated under the policy whether she began work early or late).  However, plaintiff has presented evidence that,

as applied, there is a factual dispute whether defendants' policy systematically undercompensates employees. *See, e.g.*, *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126-27 (C.D. Cal. 2011) (collecting cases). Plaintiff contends that the pre- and post-shift time regularly took about three to five minutes and, as a result, her time records "show[] rounding consistently in favor of [defendants]." *See* Docket No. 103 at 12, ¶ 52. The Court agrees that, over the long term, a policy of rounding pre- and post-shift time that regularly took three to five minutes to the nearest fifteen minutes would systematically undercompensate employees (as opposed to, for example, a policy rounding time to the nearest ten minutes). Because there is a factual dispute as to whether defendants' rounding policy was permissibly neutral pursuant to 29 C.F.R. § 785.48(b), the Court will deny summary judgment to defendants on the portion of plaintiff's FLSA claims seeking recovery for pre- and post-shift time.

### 2. *Sleep Time*

Plaintiff claims that defendants' exclusion of eight-hour periods for "sleep time" under the continuous shift policy violates the FLSA. Defendants argue that the continuous shift policy is permitted by the FLSA. Docket No. 98 at 23. Specifically, defendants rely on 29 C.F.R. § 785.22, which states:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

(b) Interruptions of sleep.  If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked.  If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted.  For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22 (citations omitted).  The regulation requires that, in order for an

employer to exclude sleep time from an employee's shift, the employee must "usually

enjoy an uninterrupted night's sleep," the employer must provide "adequate sleeping

facilities," and the parties must have an "expressed or implied agreement" to exclude

the sleep time.  *Id.*  Defendants argue that there is no factual dispute that all three

requirements are satisfied here.  Plaintiff concedes that there was an implied

agreement to exclude the sleep time.  *See* Docket No. 103 at 13.

### a.  Uninterrupted night's sleep

Defendants argue that plaintiff usually enjoyed an uninterrupted night's sleep.

Docket No. 98 at 27.

The parties disagree as to whether "an uninterrupted night's sleep" in 29 C.F.R.

§ 785.22(a) is satisfied by an employee sleeping at least five hours in total, or at least

five consecutive hours.  Circuit courts have split as to what the regulation requires.

*Compare Roy v. Cty. of Lexington, S.C.*, 141 F.3d 533, 546 (4th Cir. 1998) (holding

that, "where employees can . . . enjoy at least five uninterrupted hours of sleep, the

regulations can fairly be read to mean that such employees receive an 'uninterrupted

night's sleep'"); *with Hultgren v. Cty. of Lancaster, Neb.*, 913 F.2d 498, 506 (8th Cir.

1990) (holding that, where interruptions "cumulatively result[] in plaintiffs averaging from

zero to four hours of sleep each night," the time must be counted as work time).

However, the Department of Labor interprets the regulation as requiring that the five

hours be "consecutive" as well as uninterrupted.  *See* U.S. Department of Labor, Field

Operations Handbook, § 31b12(c), https://www.dol.gov/whd/FOH/FOH_Ch31.pdf ("An

employee can usually enjoy an uninterrupted night's sleep if an employer's interruptions

that prevent him or her from getting [five] consecutive, uninterrupted hours of sleep

occur less than half the time."); *see also Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281,

1284 (10th Cir. 2017) (using the Field Operations Handbook to interpret 29 U.S.C.

§ 203(m) and 29 C.F.R. § 531.56)(e)).  The Department of Labor has also issued

guidance (the "Field Assistance Bulletin") to Wage and Hour Division field staff

explaining that, for purposes of § 785.22(a), the five hours must be continuous.  *See*

U.S. Department of Labor, Field Assistance Bulletin No. 2016-1, at 6 (April 25, 2016),

https://www.dol.gov/whd/FieldBulletins/fab2016_1.pdf.  This guidance is based on a

distinction between the purposes of § 785.22(a) and (b).  As the Field Assistance

Bulletin explains:

> The standard in 29 C.F.R. 785.22(a) regards whether as a general matter
> the employee in question has a job in which the hours worked exception
> for sleep time can appropriately be applied, which is in part a question of
> whether the employee is typically able to sleep enough that it is generally
> reasonable to consider up to eight overnight hours as outside of her work
> time.  As to that issue, WHD believes five consecutive hours of sleep
> without interruption constitutes a meaningful night's sleep.  29 C.F.R.
> 785.22(b), on the other hand, addresses whether if the requirements of 29
> C.F.R. 785.22(a) are met such that an employee's sleep time is usually
> excluded from her hours worked, on any particular night, that employee
> has gotten enough sleep to reasonably permit the exclusion of any portion
> of her regular sleeping period from her hours worked on that night.

Field Assistance Bulletin at 6 n.6.  The Court finds the Department of Labor's interpretation of the regulation persuasive.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (holding that, even where an agency's interpretation is not entitled to *Auer* deference, courts should "give deference to an agency's reading . . . to the extent that it has the power to persuade" (internal quotation omitted)).[16]  It makes little sense to, as defendants propose, read a regulation requiring five "uninterrupted" hours of sleep to be satisfied by five non-consecutive, i.e. interrupted, hours of sleep.  Thus, to survive summary judgment, plaintiff must show that there is a genuine dispute of material fact as to whether she usually, i.e. more than half of the time, got more than five consecutive hours of sleep.

There is a genuine dispute as to whether plaintiff usually got more than five consecutive hours of sleep.  In her deposition, plaintiff repeatedly stated that there was

---

[16] In *Kisor*, the Supreme Court restated and clarified the doctrine of *Auer* deference, explaining that a court should only apply *Auer* deference where the interpretation (1) is "genuinely ambiguous" after exhausting all the "traditional tools" of construction, (2) is "reasonable," and (3) has a "character and context . . . entitling [the interpretation] to controlling weight."  *Kisor*, 139 S. Ct. at 2414-18; *see Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of its own ambiguous regulation is entitled to deference unless "plainly erroneous or inconsistent with the regulation").  However, the *Kisor* Court affirmed that agency interpretations of a regulation may be considered for their persuasive power, even where *Auer* deference does not apply.  *See Kisor*, 139 S. Ct. at 2414; *see also id*. at 2424 (Roberts, C.J., concurring) (noting the distinction between "holding that a court ought to be persuaded by an agency's interpretation and holding that it should defer to that interpretation under certain conditions"); *and id.* at 2447-48 (Gorsuch, J., dissenting) (suggesting that the Court's new formulation of *Auer* deference "does not constrain [lower courts'] independent judgment any more than *Skidmore* [*v. Swift*, 323 U.S. 134 (1944)]," which allows courts to "follow the agency's view only to the extent it is persuasive" (internal alterations omitted)).  Given the persuasive power of the Department of Labor's interpretation, the Court need not decide whether the regulation is entitled to *Auer* deference.

"a lot of interruption" in the house.  *See, e.g.*, Docket No. 91-3 at 4, 7, 16, 22.

Moreover, in her declaration, plaintiff states that she "rarely" slept for five consecutive

hours.  *See* Docket No. 91-4 at 3, ¶¶ 8-9.  Plaintiff's co-workers make the same

statement.  *See* Docket No. 91-6 at 3, ¶¶ 6-7; Docket No. 91-7 at 3, ¶¶ 6-7.

Defendants argue that, because their policy required plaintiff to "report all instances of

work performed" during a sleep period and plaintiff only reported performing work in

7.4% of her sleep periods, plaintiff usually enjoyed an uninterrupted night's sleep.  *See*

Docket No. 98 at 27.  However, plaintiff has raised a genuine issue of material fact

about whether this was defendants' policy, as she has presented evidence that she was

told to "record all time [plaintiff] was actively performing work for residents at night, not

all interruptions."  *See* Docket No. 103 at 6-7, ¶ 19.  Thus, plaintiff's time records do not

conclusively demonstrate that plaintiff usually enjoyed an uninterrupted night's sleep.

Taking all inferences in her favor, a reasonable jury could find that plaintiff did not

experience five hours of sleep more than half the time, thus making defendants' policy

of excluding her sleep time unprotected by 29 C.F.R. § 785.22(a).  Accordingly, the

Court will deny summary judgment for defendants on the question of whether plaintiff

usually had an uninterrupted night's sleep.

### b.  Adequate Sleeping Facilities

Defendants argue that there is no genuine issue of material fact as to whether

plaintiff had adequate sleeping facilities.  Docket No. 98 at 24.  The parties agree that

(1) plaintiff slept in a room at Nevada House which was used as an office during the

day and had a private bathroom and shower, Docket No. 98 at 7, ¶¶ 27, 32; (2) the

room was heated, *id*. ¶ 29; (3) plaintiff was provided with pillows and sheets for her own use, *id*. ¶ 28; (4) plaintiff had access to a kitchen and a refrigerator, *id*. ¶ 30; and (5) defendants kept the hallway light on for the safety of the residents. *Id*. ¶ 33. However, the parties dispute whether the bedroom was "private." *See* Docket No. 103 at 5, ¶ 16.

Courts have offered different interpretations as to what the regulation requires, but generally require that the sleeping facility be "private." *See, e.g.*, *Hultgren*, 913 F.2d at 506 (stating that the regulation is "premised on the notion that employees are . . . provided with adequate sleeping facilities or a home-like environment in a group home setting"); *Lott v. Rigby*, 746 F. Supp. 1084, 1089 (N.D. Ga. 1990) (employee must be provided "private quarters in a home-like atmosphere"). *But see Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp. 2d 685, 695 (N.D. Ohio 1999) (holding that "the most telling indicator of whether the sleeping facilities were adequate is whether [plaintiff] ever indicated in any way that they were not"). The sleep-time regulation, 29 C.F.R. § 785.22, offers "no guidance" as to what constitutes an adequate sleeping facility. *Burnison v. Mem'l Hosp., Inc.*, 820 F. Supp. 549, 558 (D. Kan. 1993).

Defendants' arguments are not persuasive. First, defendants argue that plaintiff's bedroom was adequate as a matter of law. Defendants cite *Blackburn v. Kansas Elks Training Ctr. for Handicapped, Inc.*, 40 F. Supp. 2d 1270, 1274 (D. Kan. 1999), for the proposition that adequate facilities are established as a matter of law "where a direct care employee for individuals with developmental disabilities was provided with a room that had a bed, dresser, night stand, and closet." *See* Docket No. 107 at 14. However, *Blackburn* held only that a defendant who provides these facilities

did not willfully violate the FLSA. *See Blackburn*, 40 F. Supp. 2d at 1274. Thus, it does not support the proposition that the sleeping facilities were affirmatively adequate. Defendants also suggest that there is no genuine dispute as to whether plaintiff's bedroom was private. However, plaintiff offers evidence that she was required to leave the bedroom door "open and unlocked so that residents could access her at any time." *See* Docket No. 103 at 5, ¶ 16. Defendants respond that this evidence does not show that the bedroom was not "utilized only by her during the time she slept in that room." *See* Docket No. 107 at 3, ¶ 16. Defendants provide no authority to support this definition of "private." The Court is not persuaded that a bedroom that has an "open and unlocked" door so plaintiff could be accessed "at any time" is "private." Finally, defendants argue that the facilities are adequate because "[p]laintiff never . . . complained about her sleeping facilities." *See* Docket No. 107 at 14 (citing *Trocheck*, 61 F. Supp. 2d at 695). However, although defendants contend that plaintiff did not contest this "fact" in her response, the Court is unable to identify this "fact" in defendants' statement of undisputed facts. *See* Docket No. 98 at 2-10, ¶¶ 1-52. The Court finds that defendants have not carried their burden to show that this fact is undisputed for the purposes of their summary judgment motion.

In summary, the Court denies summary judgment for defendants on the portion of plaintiff's FLSA claim that seeks compensation for pre- and post-shift time, as there is a genuine dispute of material fact as to whether the pre- and post-shift time was compensated under a permissible rounding policy. The Court denies summary judgment on the portion of plaintiff's FLSA claim that seeks compensation for unpaid sleep time, as there is a genuine dispute of material fact as to whether plaintiff (1)

29

usually enjoyed an uninterrupted night's sleep and (2) was provided with adequate sleeping facilities.

### C.    Plaintiff's Third Claim

Plaintiff's Third Claim asserts that defendants are liable to plaintiff (and the proposed class) "in quasi-contract, including unjust enrichment under Colorado law." Docket No. 33 at 21, ¶ 134.  Defendants argue that these claims are preempted by the FLSA.  Docket No. 98 at 2.  In response, plaintiff concedes that the claim should be dismissed and that judgment can be entered on the claim.  Docket No. 103 at 13.[17] Accordingly, the Court will grant summary judgment for defendants on plaintiff's Third Claim.

### D.    Statute of Limitations as to Surviving Claims

Defendants move for summary judgment on any claims which accrued prior to July 14, 2014 as barred by the statute of limitations.  Docket No. 98 at 33-34.

A cause of action under the FLSA is barred "unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The rule is the same for claims under the CWCA.  Colo. Rev. Stat. § 8-4-122.  "To fall under the three-year limitation, the plaintiff must show that 'the

---

[17] Plaintiff argues, and defendants do not contest, that the Court "should not embrace [d]efendants' legal theory," and that the Court "can enter judgment as to the claim without making a legal finding."  Docket No. 103 at 13 n.5.  Plaintiff is correct that a party's abandonment of a claim is a sufficient basis to grant summary judgment.  *See, e.g.*, *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 769 (10th Cir. 2001) (unpublished) (noting that plaintiff's abandonment of claims in his response brief is "fatal" to those claims).  Thus, the Court does not reach defendants' arguments in resolving plaintiff's Third Claim.

employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute.'" *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Courts have found willful violations where the evidence shows "(1) admissions that an employer knew its method of payment violated the FLSA prior to the accrual of the action; (2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA; (3) earlier violations of the FLSA that would put the employer on actual notice of the [r]equirements of the FLSA; (4) failure to keep accurate or complete records of employment; and (5) prior internal investigations which revealed similar violations." *Smith v. Keypoint Gov't Sols., Inc.*, No. 15-cv-00865-REB-KLM, 2016 WL 7324606, at *2 (D. Colo. Dec. 16, 2016) (collecting cases).

It is the plaintiff's burden to prove that a violation is willful. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (noting that willfulness is "one of the unusual circumstances where the burdens of pleading and persuasion are not on the same party").[18] As defendants have identified a lack of evidence for plaintiff as to defendants' willfulness, it is plaintiff's burden to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Plaintiff, in response, does not present any evidence of defendants' willfulness. Instead, plaintiff argues that summary judgment on this issue is premature. *See* Docket No. 103 at 34. However, as

---

[18] Although plaintiff initially argued that proving willfulness is defendants' burden, *see* Docket No. 103 at 33-34, plaintiff acknowledges that this is a misstatement of law. *See* Docket No. 109.

discussed above, the Court finds that summary judgment is not premature. As plaintiff

has failed to designate facts showing a genuine dispute as to defendants' willfulness,

the Court grants summary judgment to defendants and, applying the two-year statute of

limitations, bars all claims under the FLSA and CWCA accruing before July 14, 2014.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 98] is

granted in part and denied in part. It is further

**ORDERED** that plaintiff's Motion for Partial Summary Judgment Against

Continuum of Colorado, Inc. as to Plaintiff's 12-Hour Overtime Claim [Docket No. 99] is

denied. It is further

**ORDERED** that plaintiff's Motion for Class Certification Under Rule 23(b)(3) and

Appointment of Class Counsel Under Rule 23(g) [Docket No. 91] is denied without

prejudice. It is further

**ORDERED** that plaintiff's Motion for Leave to File Surreply to Defendants' Motion

for Summary Judgment (ECF Doc. 98) [Docket No. 110] is granted. It is further

**ORDERED** that plaintiff's Motion for Leave to File Supplemental Authority in

Support of Plaintiff's Motion for Summary Judgment (ECF Doc. 99) and in Opposition to

Defendants' Motion for Summary Judgment (ECF Doc. 98) [Docket No. 118] is granted.

It is further

**ORDERED** that, on or before October 25, 2019, defendants may file a supplemental motion for summary judgment, not to exceed ten pages, on the portion of plaintiff's First Claim brought pursuant to the CWCA.  It is further

**ORDERED** that, on or before November 8, 2019, plaintiff may file a renewed motion for class certification, explaining why a class should be certified on the portion of plaintiff's First Claim brought pursuant to the CWCA.

DATED September 23, 2019.

BY THE COURT:


 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
Chief United States District Judge